Alan E. Sash
Lee S. Shalov
**MCLAUGHLIN & STERN LLP**
260 Madison Ave.
New York, NY 10016
T:  646-278-4298
F:  212-448-0066

Andrew N. Friedman
Whitney R. Case
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Ave., N.W., Suite 500W
Washington, D.C.  20005
T:  202-408-4600
F:  202-408-4699

Angela Edwards
**LAW OFFICE OF ANGELA EDWARDS**
72 Canterbury Circle
East Longmeadow, MA 01028
T:  413-525-3820

*Attorneys for Plaintiffs
on behalf of themselves and all others
similarly situated.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------- X

**SUSAN SABOL, VALERIE DONE, and
KATHLEEN KLODNER on behalf of
themselves and all others similarly situated,**

                **Plaintiffs,**

        **-against-**

**HYDROXATONE, LLC and ATLANTIC
COAST MEDIA GROUP**

            **Defendants.**

------------------------------------- X

:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION NO.
2:11-cv-04586-SRC-MAS**

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR ENTRY
OF AN ORDER GRANTING
PRELIMINARY APPROVAL OF THE
CLASS SETTLEMENT AND
APPROVING THE FORMS OF
NOTICE TO THE CLASS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 1

THE PROPOSED SETTLEMENT ......................................................................... 3

NOTICE TO THE CLASS .................................................................................... 6

ARGUMENT ....................................................................................................... 7

I.     THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENTS ......................................................................................... 7

II.    THE PROPOSED SETTLEMENT EASILY PASSES THE PRELIMINARY
FAIRNESS DETERMINATION ................................................................. 9

      A.    The Proposed Settlement is the Result of an Arm's-Length Negotiation
and Therefore Satisfies the Procedural Component for Preliminary
Approval ......................................................................................... 10

      B.    The Discovery In This Case Was Sufficient For the Parties to Determine
the Basic Facts and the Scope of the Litigation .................................... 10

      C.    Counsel Are Highly Experienced in Class Action Litigation ................ 11

      D.    The Ability of Defendants to Withstand a Greater Judgment ................ 11

III.   THE PROPOSED NOTICE IS ADEQUATE UNDER RULE 23(C)(2) ........ 11

IV.   THE CASE IS APPROPRIATE FOR CERTIFICATION OF A SETTLEMENT
CLASS ...................................................................................................... 13

      A.    Numerosity Under Rule 23(a)(1) ........................................................ 13

      B.    Commonality Under Rule 23(a)(2) ..................................................... 14

      C.    Typicality Under Rule 23(a)(3) .......................................................... 15

      D.    Adequacy of Representation  Under  Rule 23(a)(4). ............................. 15

      E.    The  Requirements of Rule  23(b)(3) Are Met ..................................... 16

      F.    Final  Approval Hearing Should  be Scheduled .................................... 18

V.    CONCLUSION ......................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ..................................................................16

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)........................................................................13, 16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...............................................................11

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009).................12, 15, 16, 17

*Curiale v. Lenox Grp., Inc.*,
  No. 07-1432, 2008 U.S. Dist. LEXIS 92851 (E.D. Pa. Nov. 14, 2008) ...................9

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ..................................................................12

*Dewey v. Volkswagen of Am.*,
  728 F. Supp. 2d 546 (D.N.J. 2010) ........................................................13, 17

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010).................................................................18

*Farinella v. PayPal*,
  611 F. Supp. 2d 250 (E.D.N.Y. 2009) .......................................................12

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..................................................................12

*Gates v. Rohm and Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008)..............................................................10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995).....................................................................8

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)....................................................................9

*In re Grand Theft Auto Video Game Consumer Litig.,*
    251 F.R.D. 139 (S.D.N.Y. 2008) ............................................................12

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..............................................................13

*Inmates of the Northumberland Cnty. Prison v. Reish,*
    No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479 (M.D. Pa. Mar. 17, 2009) ..........................15

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
    204 F.R.D. 359 (N.D. Ohio 2001) .........................................................8

*Jones v. Commerce Bancorp, Inc.,*
    No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144 (D. N.J. July 16, 2007) ........................9

*Lucas v. Kmart Corp.,*
    234 F.R.D. 688 (D. Colo. 2006) ...........................................................9

*Marcus v. BMW of N. Am., LLC,*
    No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010) .......................13

*Mehling v. N. Y. Life Ins. Co.,*
    246 F.R.D. 467 (E.D. Pa. 2007) ...........................................................8

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) .......................................................................12

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    259 F.3d 154 (3d Cir. 2001) ...............................................................15

*In re OSB Antitrust Litig.,*
    No. 06-826, 2007 U.S. Dist. LEXIS 56584 (E.D. Pa. Aug. 3, 2007) ..............................14

*Petrovic v. AMOCO Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ............................................................12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998) ...........................................................8, 9, 14

*Ritti v. U-Haul Int'l, Inc.,*
    05-4182, 2006 U.S. Dist. LEXIS 23393 (E.D. Pa. Apr. 26, 2006) ...............................15

*Senter v. Gen. Motors Corp.,*
    532 F.2d 511 (6th Cir. 1976) .............................................................15

*Thomas v. NCO Fin. Sys.,*
    2002 US. Dist. LEXIS 14157 (E.D. Pa. July 31, 2002) .........................................8

*Todd v. Retail Concepts,*
　　No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008)............................................13

*Wal-Mart Stores, Inc. v. Dukes,*
　　131 S. Ct. 2541 (2011)...................................................................14

*In re Warfarin Sodium Antitrust Litig.,*
　　391 F.3d 516 (3d Cir. 2004)................................................................8

*Williams v. First Nat'l Bank,*
　　216 U.S. 582 (1910).......................................................................9

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,*
　　No. 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004).............................12

*Zinberg v. Wash. Bancorp, Inc.,*
　　138 F.R.D. 397 (D.N.J. 1990)............................................................14

## RULES

Fed. R. Civ. P. 23 ................................................................. passim

Fed. R. Civ. P. 23(a) ...........................................................13, 14, 15, 16, 18

Fed. R. Civ. P. 23(b) ..................................................................13, 18

Fed. R. Civ. P. 23(c) .....................................................................12

Fed. R. Civ. P. 23(e) ......................................................................7

Fed. R. Civ. P. 23(h) .....................................................................18

## OTHER AUTHORITIES

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2009)...........................8, 11, 18

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002)................7

iv

## PRELIMINARY STATEMENT

Plaintiffs Susan Sabol, Valerie Done and Kathleen Klodner (collectively, "Plaintiffs"), with the consent of defendants Hydroxatone, LLC and Atlantic Coast Media Group, and their subsidiaries and affiliates (collectively, "Hydroxatone" or "Defendants"), respectfully submit this memorandum in support of their Joint Motion for Preliminary Approval of Class Settlement (the "Motion"). The proposed settlement of this class action provides for the payment of $3 million into a common fund for the benefit of the Class (the "Cash Fund"), up to an additional $4 million in non-cash benefits to be offered to the Class (the "Product Benefit"), and significant injunctive relief. A copy of the Settlement Agreement entered into by the Parties is attached hereto as Exhibit 1.[1] Entry of the proposed Preliminary Approval Order will allow the parties to give notice of the settlement to class members and to respond to properly filed objections, if any, and then to proceed to a hearing on final approval. As set forth more fully below, the proposed Settlement Agreement is fair, reasonable and adequate, and worthy of preliminary approval.

## FACTUAL BACKGROUND

This putative national class action lawsuit (the "Action") was commenced against Hydroxatone on August 8, 2011 (Docket No. 1, 2:11-cv-04586-SRC-MAS), challenging alleged deceptive customer service practices relating to Hydroxatone's risk free trial offers and auto-shipment programs, which include the alleged failure to credit returns of beauty products and the alleged failure to cancel membership in auto-ship programs. Declaration of Andrew N. Friedman ¶ 3, attached as Exhibit 2 (hereinafter "Friedman Declaration"). On March 23, 2012, plaintiffs Susan Sabol and Valerie Done, on behalf of the national class, filed the First Amended

---

[1] Capitalized terms used but not defined herein have the meanings attributed to them in the Settlement Agreement.

Complaint. (Docket No. 30).  In the Amended Complaint, Plaintiffs sought relief on behalf of a nationwide class for alleged violations of the New Jersey Consumer Fraud Act, breach of contract, unjust enrichment, and for assorted declaratory relief.  The First Amended Complaint also included alternative claims under the Utah Consumer Sales Practices Act.  Friedman Decl. ¶ 4.

In response to the First Amended Complaint, Defendants filed a Motion to Dismiss on April 30, 2012 (Docket. No. 33).  That motion is fully briefed and was awaiting adjudication until the case was stayed to allow the parties to pursue settlement negotiations.  Friedman Decl. ¶ 5.

The parties served interrogatories and requests for production of documents on December 16, 2011.  In response to Plaintiffs' request for documents, Defendants produced documents on 5 separate dates, resulting in approximately 62,000 pages received.  The documents produced by Defendants included a product specialist training manual; scripts for customer service personnel dealing with consumers; transcripts for radio and TV advertisements; internal emails; personnel files and Defendant's insurance policy relating to the litigation.  Plaintiffs' counsel reviewed and analyzed these documents.  Friedman Decl. ¶ 6.  Moreover, as noted below, Defendants produced additional documents and financial information in anticipation of settlement discussions.

In June 2012, settlement negotiations began between the two parties.  As a prerequisite to a settlement meeting, Plaintiffs requested – and received --certain discovery regarding Defendants' sales and financial status.  On July 17, 2012, Counsel for Defendants and a representative of Hydroxatone, conducted settlement discussions with Class Counsel in New York.  The parties were not in agreement on the terms of any settlement after the July 17th

meeting, but determined that additional negotiations with an experienced mediator might be fruitful.  Friedman Decl. ¶ 7.

The parties agreed to an August 14, 2012 mediation session before the Honorable Stephen M. Orlofsky (ret.).  Prior to the mediation session, Defendants provided Class Counsel with additional information for settlement purposes in response to Plaintiffs' specific requests, including information related to Defendants' sales data, customer return/refund data, return/refund policies, record-keeping facilities, and insurance coverage.  The August 14th mediation session resulted in the two parties reaching a tentative settlement agreement. Friedman Decl. ¶ 8.  Since that time, the Court has been apprised of the agreement in principle and multiple orders staying the litigation were entered by the Court in order to allow the Parties to draft and execute the terms of the Settlement.  A Memorandum of Understanding describing the principal terms of the Settlement was executed by the Parties on December 4, 2012.[2]  After months of working on the explicit terms of the Settlement, settlement papers were executed by the Parties on February 7, 2013.  Friedman Decl. ¶ 9.

The parties now submit for review and preliminary approval the full terms of the Settlement Agreement of the parties.

## THE PROPOSED SETTLEMENT

The parties reached agreement on the terms of the proposed settlement through vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations, including a lengthy mediation session in front of Judge Stephen M. Orlofsky (Ret.).  If the

---

[2] On February 7, 2013, Plaintiffs Susan Sabol, Valerie Done and Kathleen Klodner filed a Second Amended Class Complaint (Docket No. 64).  The Second Amended Complaint added Plaintiff Klodner's claims arising from her participation in Hydroxatone's Preferred-Customer Beauty Program. Friedman Decl. ¶ 10.

proposed settlement is approved by the Court, Defendants have agreed to:  make meaningful changes to the manner in which they market their products; make a payment of $3 million in cash into a common fund for the benefit of the proposed settlement class, including the costs of settlement administration and attorney's fees and costs associated with the prosecution of these claims and the administration of the settlement; and to provide up to an additional $4 million in non-cash benefits to be offered to the settlement class.  The proposed settlement class consists of:

> All Persons residing in the United States who between January 1, 2005 and [insert date of Preliminary Approval Order] received, ordered, signed up for, paid for, and/or were charged for Hydroxatone-branded products, and/or were charged shipping and processing fees for such products, in connection with a Risk-Free Trial and/or Auto-Shipment Program.  . . .

> The following persons are expressly excluded from the Settlement Class: Defendants, any entities in which Defendants has or had a controlling interest, any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, any Judge assigned to this action and his or her immediate family, and anyone who timely requests exclusions from the Class.

As set forth in Section 5 of the Settlement Agreement, cash and non-cash benefits in the settlement fund are available for Settlement Class Members from two categories:

**Group 1** – For those Settlement Class Members who attempted to return or cancel product shipments and paid more than shipping and processing and/or return postage, such claimants will be eligible to receive their choice of either a Cash Benefit or a Product Benefit. The Cash Benefit will be $100 for Settlement Class Members who spent more than $200 with Defendants after all prior refunds, $75 for Settlement Class Members who spent between $100 and $200 with Defendants after all prior refunds, and $40 for Settlement Class Members who spent less than $100 with Defendants after all prior refunds. The Cash Benefit will be subject to a *pro rata* reduction if the total Approved Claims exceed the Net Settlement Fund.

The Product Benefit for Group One members would be their choice of one of six Hydroxatone products (each with a retail price of $49.95 or $59.95) if they spent more than $150 with Defendants after all prior refunds or their choice of one of five Hydroxatone products (each with a retail price between $19.95 and $39.95) if they spent $150 or less with Defendants after all prior refunds.

**Group 2** – These Settlement Class Members: (1) paid only shipping and processing and/or return postage in connection with a risk free trial offer product and/or Preferred-Customer Beauty Program Product(s); (2) paid more  than shipping and processing and/or return postage in connection with a risk free trial offer product and/or Preferred-Customer Beauty Program Product(s), but did not try to, attempt to, or take any action designed to return the products; (3) cancelled and/or attempted to cancel their auto-ship/Preferred-Customer Beauty Program, but paid only shipping and processing or return postage costs; (4) never tried to cancel their auto-ship/Preferred-Customer Beauty Program; or (5) otherwise fall within the definition of the Settlement Class.  Group 2 Settlement Class Members will receive a Product Benefit.  Each will be eligible to receive their choice of one of five Hydroxatone products (each with a retail price between $19.95 and $39.95)

Those Settlement Class Members who choose the Product Benefit (from either Group 1 or Group 2) will not have to pay any shipping or processing charges to receive the selected product.  Shipping and processing costs (not to exceed $7.95 per shipment) will be deducted from the Cash Fund.  Attorneys' fees and costs, Plaintiff Participation Awards, as awarded by the Court, and administrative costs of notice and the settlement will be deducted from the Cash Fund.

As part of the Settlement, Defendants will also agree not to directly or indirectly engage in specific acts or practices that were alleged to be deceptive or unlawful.  Specifically, Defendants:  (i) will not use the word "free" by itself for offers where the customer is required to cancel and return the product to avoid being billed for the price of the free product; (ii) will disclose the terms of the Preferred-Customer Beauty Program and Beauty Auto-Ship Program in a clear and conspicuous manner before getting the customer's final acceptance of a risk-free trial offer; (iii) will provide a simple mechanism on their websites which allows a customer to easily effectuate a cancellation of an auto-ship program; and (iv) will provide customers who provide an email address and who cancel with email confirmation of such cancellation within 10 days of the cancellation becoming effective.

Defendants have agreed to not oppose an application by Class Counsel seeking the reimbursement of their expenses and for fees of not more than 33 1/3 percent of the Cash Fund. Class Counsel will also seek the payment of Participation Awards totaling $3,500 to the named Plaintiffs in this action for their contribution to the Action.

To the extent there is any money remaining in the Cash Fund at the close of the Claim Period after the *pro rata* payment of the Cash Benefit, and the fees and expenses noted above, the remaining funds will be paid to a *cy pres* recipient, the Electronic Frontier Foundation.

Finally, as part of the Settlement, Defendants have produced certain additional financial reports to Class Counsel which confirm the statements made during Mediation regarding Defendants' financial status.

## NOTICE TO THE CLASS

As set forth in Section 10 of the Settlement Agreement, notice will be made by Defendants, with the aid of a third-party administrator, by way of:  (a) a direct email/postcard notice to class members in the Defendants' database; (b) a press release describing the settlement

and directing class members to the dedicated settlement website published via Business Wire or PR Newswire; and (c) a dedicated settlement website that will contain the Second Amended Complaint, the Preliminary Approval Order, the Settlement Agreement, a long-form notice and claim forms available and where class members will be able to file a Claim Form electronically.

The parties have agreed, and the law supports a finding, that compliance with the notice procedures described in the Settlement Agreement is the best notice practicable under the circumstances regarding pendency of the Action, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval (Final Fairness) Hearing.

## ARGUMENT

The Settlement Agreement should be approved by this Court.  The settlement is the result of months of arm's-length negotiations among the parties and their highly-experienced counsel. The settlement provides significant monetary benefits considering all of the attendant risks of litigation.  Plaintiffs' counsel have investigated and prosecuted this case for many months and strongly believe that the proposed settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(1)(C) for the reasons set forth below.  The settlement meets this standard, taking into account the likelihood of success and the inherent risks, time and expense of litigation.

## I.   THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement. Courts generally favor settlements of class actions.  "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval."  W. Rubenstein, H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002).

The Third Circuit has a strong judicial policy that encourages class settlements, especially those that are the product of arm's-length negotiations, and courts consider this policy when deciding whether to approve a settlement.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").  As such, in making its approval decision pursuant to Rule 23(e), the Court should limit its review of what is otherwise a private consensual agreement negotiated between the parties only to the extent necessary to make a reasoned judgment that the agreement is not the product of fraud, overreaching, or collusion, by or between the negotiating parties, and that the settlement itself is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).

While the ultimate approval of a class action settlement depends on whether the settlement is "fair, adequate and reasonable," in evaluating a proposed settlement for preliminary approval, "[t]he Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."  *Mehling v. N. Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (quoting *Thomas v. NCO Fin. Sys.*, 2002 US. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002); *accord, In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001) preliminary approval should be granted if there are no grounds to doubt the settlement's fairness or other deficiencies. Manual for Complex Litig., § 21.632 (4th ed. 2009)).  As one court has aptly stated, "[t]he purpose of the preliminary approval

process is to determine whether there is any reason <u>not</u> to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted; emphasis supplied).  This approach is consistent with the principle that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998).

In making this assessment at the preliminary approval stage, district courts within the Third Circuit typically consider factors such as: (i) whether the negotiations occurred at arm's length; (ii) whether there was sufficient discovery; and (iii) whether the proponents of the settlement are experienced in similar litigation.  *See Curiale v. Lenox Grp., Inc.*, No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *26 (E.D. Pa. Nov. 14, 2008) (citations omitted).  *See also*, *Jones v. Commerce Bancorp, Inc.*, No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144, at *5 (D. N.J. July 16, 2007); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (considering the complexity of case, reaction of class members, stage of proceedings, risks associated with the litigation, ability of the defendant to withstand a greater settlement, and whether the settlement falls within the range of reasonableness).

## II.    THE PROPOSED SETTLEMENT EASILY PASSES THE PRELIMINARY FAIRNESS DETERMINATION

Because there are no "obvious deficiencies" in the Settlement Agreement, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are readily satisfied here.  Plaintiffs respectfully submit that this Settlement is fair, adequate, and reasonable; that the requirements for final approval will be satisfied; and that Class Members will be provided with notice in a manner that satisfies the requirements of due process and Fed. R. Civ. P. 23(e).  Therefore, this Court is respectfully requested to enter the proposed order granting

preliminary approval, which will: (i) grant preliminary approval of the proposed Settlement; (ii) certify the Settlement Class pursuant to the provisions of Fed. R. Civ. P. 23; (iii) schedule a Final Approval Hearing to consider final approval; and (iv) direct that notice of the proposed Settlement and hearing be provided to Class Members in a manner consistent with the agreed-upon Notice Plan in the Settlement Agreement.

**A.      The Proposed Settlement is the Result of an Arm's-Length Negotiation and Therefore Satisfies the Procedural Component for Preliminary Approval**

The proposed settlement is the result of good faith, arms-length negotiations between adverse parties to this litigation.  In more than 1 1/2 years of litigation since this case was commenced in August 2011, all counsel have zealously and independently represented their respective parties' interests, and the proposed Settlement is the result of this zealous advocacy. Moreover, the settlement is the product of months of hard-fought negotiations including a mediation session before an experienced mediator.

**B.      The Discovery In This Case Was Sufficient For the Parties to Determine the Basic Facts and the Scope of the Litigation**

The parties have engaged in months of discovery related to class certification and the claims of the individual named plaintiffs.  As noted above, Defendants have produced thousands of pages of documents that relate to the core allegations of the case.  In addition, they have produced data and other materials as part of the mediation that related to Defendants' sales figures, customer return/refund data, return/refund policies and record-keeping facilities. All of this information was reviewed and analyzed by Class Counsel.  *See* Friedman Decl ¶¶ 7- 8. Because of the discovery engaged in by the parties, the Plaintiffs' claims have been challenged, developed more fully, and narrowed.  Therefore, the parties have "conducted sufficient discovery to estimate the merit and value of the Plaintiffs' case . . . and reach a reasonable settlement." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008).

### C.   Counsel Are Highly Experienced in Class Action Litigation

Plaintiffs' counsel have diligently investigated potential class claims in this action, have substantial experience successfully litigating consumer class actions, are knowledgeable about the law relevant to this action, and have committed significant resources to representing the class.  Friedman Decl. ¶ 11.  Similarly, Defendants' counsel have vigorously defended against Plaintiffs' claims in this action, have substantial experience defending against consumer class actions, are knowledgeable of the law relevant to this action, and have committed significant resources to representing the Defendants.

### D.   The Ability of Defendants to Withstand a Greater Judgment

While usually not a factor that requires analysis at the preliminary approval stage, the issue of "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement," is appropriately raised here.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001).  In the present case, it became clear at the mediation that Defendants had a limited amount of funds available to settle the claims in the litigation.  Despite the existence of significant revenues obtained from its sales, Defendants professed that they were experiencing losses and that they had little cash to pay a class settlement.  These statements were confirmed through the production of various financial statements.  Indeed, the bulk of the Settlement proceeds will be funded via diminishing insurance coverage.

## III.   THE PROPOSED NOTICE IS ADEQUATE UNDER RULE 23(c)(2)

Under Fed. R. Civ. P. 23(e), class members who would be bound by a settlement are entitled to reasonable notice of it before the settlement is ultimately approved by the Court.  *See* Manual for Complex Litig. (4th ed. 2009) § 21.312.  And because Plaintiff here seeks certification of the Settlement Class under Rule 23(b)(3), "the Court must direct to class

members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *42-43 (W.D. Ky. Dec. 22, 2009) (citing Fed. R. Civ. P. 23(c)(2)(B)).  In order to satisfy these standards and "comport with the requirements of due process, [the] notice must be 'reasonably calculated to reach interested parties.'"  *Id*. at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995) ("Notice of a settlement proposal need only be as directed by the district court . . . and reasonable enough to satisfy due process.").  "There is no one 'right way' to provide notice as contemplated under Rule 23(e)."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 4:03-MD-015, 2004 WL 3671053, *8 (W.D. Mo. Apr. 20, 2004).  It should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).

The Notice Plan in this case is the best notice practicable under the circumstances to reach all Class Members.  The Notice itself is clear and straightforward, providing putative class members with enough information to evaluate the settlement, as well as procedures to object to the settlement.  The Notice will be provided to class members by email to those class members for whom Hydroxatone has email addresses, by postcard to those class members Hydroxatone has mailing addresses, and by publication by way of wire services, together with a dedicated website for online information about the settlement.  *See* Ex. 1 ¶¶ 10.1-10-6.  This Notice is adequate under Rule 23(c)(2).  *See Farinella v. PayPal*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009); *In*

*re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139 (S.D.N.Y. 2008); *Todd v. Retail Concepts*, No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008).

## IV.   THE CASE IS APPROPRIATE FOR CERTIFICATION OF A SETTLEMENT CLASS

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). As such, Plaintiffs seek the conditional certification of the Settlement Class set forth above and in the Settlement Agreement.

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 564 (D.N.J. 2010). *Accord Marcus v. BMW of N. Am., LLC*, No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908, at *4 (D.N.J. Nov. 19, 2010). The four requirements Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. In addition, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). Plaintiffs assert that the Settlement Class here meets all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

### A.   <u>Numerosity Under Rule 23(a)(1)</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been

met." *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56584, at *5 (E.D. Pa. Aug. 3, 2007); see also, *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) (finding that it is proper for the court to accept common sense assumptions in order to support a finding of numerosity.).  Here, the Settlement Class consists of hundreds of thousands of geographically dispersed consumers. Numerosity is therefore easily satisfied here.

      **B.**    **Commonality Under Rule 23(a)(2).**

      Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A finding of commonality does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class members do not defeat certification."  *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d at 310. The Supreme Court recently stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do."  *Id.* at 2556.

      In this case, Plaintiffs are confident that they can establish that there exist several common questions of law and fact, including whether Defendants consistently prevented Class Members from receiving refunds from the return of "risk-free" products; whether Defendants prevented the timely cancellation of auto-ship products; and whether Plaintiffs have actionable claims under their causes of action.  Commonality is therefore satisfied.

### C.   Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of

other class members. Fed. R. Civ. P. 23(a)(3). "If the claims of the named plaintiffs and class

members involve the same conduct by the defendant, typicality is established." *Inmates of the*

*Northumberland Cnty. Prison v. Reish*, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479, at *71

(M.D. Pa. Mar. 17, 2009) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259

F.3d 154, 183-84 (3d Cir. 2001)).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by Defendants related

to their disclosures regarding risk-free trial offers and auto-shipment programs, their alleged

refusal to refund Class Members for returned products, their alleged refusal to allow Class

Members to cancel their auto-ship orders and/or their uniform statements regarding their auto-

ship programs.  This requirement is therefore met.

### D.   Adequacy of Representation  Under  Rule 23(a)(4).

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "There are two criteria for

determining whether the representation of the class will be adequate: 1) The representative must

have common interests with unnamed members of the class, and 2) it must appear that the

representatives will vigorously prosecute the interests of the class through qualified counsel." *In*

*re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.* 2009 U.S. Dist. LEXIS 119870, at

*19 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

In addressing the adequacy of the proposed class representative, district courts examine

whether he or she "has the ability and incentive to represent the claims of the class vigorously,

that he or she has obtained adequate counsel, and that there is no conflict between the

individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l, Inc.*, 05-

4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006). Here, each of the Class

Representatives are adequate in that they purchased Hydroxatone "free trial" products, were

unable to receive reimbursement for returned products, and/or were unable to cancel auto-ship

orders.  They have also each actively participated in the litigation, and have been in

communication with their attorneys regarding the litigation.

With respect to the adequacy of Class Counsel, they have invested considerable time and

resources into the prosecution of this action.  *See* Friedman Decl. ¶¶ 7, 8, 11.  Class Counsel

have a wealth of experience in litigating complex class action lawsuits and were able to negotiate

a meaningful Settlement for the Class in this case.  As noted above, Plaintiffs' counsel have

extensive experience litigating complex class action cases such as this; the firm resumes of Class

Counsel are attached to the Friedman Declaration as Exhibits 2-A, 2-B, and 2-C. The adequacy

requirement is, accordingly, met here.

### E.     The  Requirements of Rule  23(b)(3) Are Met

Plaintiff seeks to certify the Settlement Class under Rule 23(b)(3), which has two

components: predominance and superiority.  *See* Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3)

predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both

require that common questions exist, but subdivision (b)(3) contains the more stringent

requirement that common issues 'predominate' over individual issues.'"  *In re Countrywide Fin.*

*Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *25 (quoting *In re*

*Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)).  When assessing predominance and

superiority, the court may consider that the class will be certified for settlement purposes only,

and that a showing of manageability at trial is not required.  *See Amchem Products, Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

"To determine whether common issues predominate over questions affecting only individual members, the Court must look at each claim upon which the plaintiffs seek recovery … determine whether generalized evidence exists to prove the elements of the plaintiffs' claims on a simultaneous, class-wide basis, or whether proof will be overwhelmed by individual issues." *Dewey*, 728 F. Supp. 2d at 568.  With respect to superiority, the Court "considers whether or not a class action is a superior method of fairly and efficiently adjudicating the controversy." *Id*. at 569.  Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination.  These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  *Id*. (quoting Fed. R. Civ. P. 23(b)(3)).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members.  For example, were this case to proceed, the primary issue would be whether Defendants were liable to the Class under the claims pled in the Complaint based on the allegations that their advertising was allegedly deceptive and misleading and that they allegedly systematically refused Class Members' requests for refunds and/or requests to cancel the auto-ship program.  This is an issue that could be subject to "generalized proof," and is a "question that is common to all class members."  *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *26 ("The proof

required [must focus] on Defendant's conduct, not on the conduct of individual class members.") So too is the case here.  Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied.  *See* Fed. R. Civ. P. 23(b)(3).  The Settlement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief.  The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendants, or by going forward with this case as a class action.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### F.   <u>Final Approval Hearing Should be Scheduled</u>

Finally, the Court should schedule a final fairness hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses and an incentive award for the Class Representatives, and determine whether to dismiss this action with prejudice. *See* Manual for Complex Litig. § 21.633 (4th ed. 2009); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 600 (3d Cir. 2010).  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the class certification and Settlement, including the fairness, adequacy and reasonableness of the Settlement. At that time, Class Counsel will present their application for their fees and expenses pursuant to Fed. R. Civ. P. 23(h), and for the incentive award to Plaintiffs.

### V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) conditionally certifying a class action with respect to the claims against Defendants pursuant

to Fed. R. Civ. P. 23(a) and 23(b)(3) for the purpose of effectuating a class action settlement of the claims against the Defendants; (2) preliminarily approving the Settlement; (3) directing notice to class members consistent with the terms of the Settlement Agreement; and (4) scheduling a Final Approval Hearing.

DATED this 7th day of February 2013     Respectfully submitted,


By  /s/ Alan Sash
Alan Sash
Lee S. Shalov
260 Madison Ave.
New York, NY
McLAUGHLIN & STERN LLP
Tel:(646) 278-4298
Fax: (212) 448-0066

Andrew N. Friedman
Whitney R. Case
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500 West
Washington, DC  20005-3964
Tel: (202) 408-4600
Fax: (202 408-4699

Angela Edwards
LAW OFFICES OF ANGELA EDWARDS
72 Canterbury Circle
East Longmeadow, MA 01028
(413) 525-3820

***Plaintiffs' Class Counsel***

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true copy of the attached Memorandum in Support of Plaintiffs' Motion for Entry of an Order Granting Preliminary Approval of the Class Settlement and Approving the Forms of Notice to the Class and supporting exhibits were served upon Defendants' counsel via ECF.

 /s/ Alan Sash          
Alan E. Sash

Dated: February 7, 2013