Alan E. Sash
Lee S. Shalov
MCLAUGHLIN & STERN LLP
260 Madison Ave.
New York, NY 10016
T: 646-278-4298
F: 212-448-0066

Angela Edwards
LAW OFFICE OF ANGELA EDWARDS
72 Canterbury Circle
East Longmeadow, MA 01028
T: 413-525-3820

Andrew N. Friedman
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave., N.W., Suite
500W
Washington, D.C. 20005
T: 202-408-4600
F: 202-408-4699

*Attorneys for Plaintiffs
on behalf of themselves and all others
similarly situated.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------- X

SUSAN SABOL, VALERIE DONE, and
KATHLEEN KLODNER on behalf of
themselves and all others similarly situated,

        **Plaintiffs,**

    **-against-**

HYDROXATONE, LLC and ATLANTIC
COAST MEDIA GROUP

        **Defendants.**

------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION NO.
2:11-cv-04586-SRC-MAS**

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF THE PROPOSED
AMENDED SETTLEMENT**

**FINAL SETTLEMENT HEARING
JULY 16, 2013**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................ 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ........................................... 2

III.  ARGUMENT ................................................................... 5

    A.    The Settlement Class Is Appropriate For Certification ............................. 5

        1.    The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied .............. 6
            a.    Numerosity ................................................. 6
            b.    Commonality ................................................ 6
            c.    Typicality ................................................. 8
            d.    Adequacy of Representation ................................. 8

        2.    The Settlement Class Meets the Requirements of Fed. R. Civ. P. 23(b)(3) ........................................ 9
            a.    Common Questions of Law and Fact Predominate ......... 10
            b.    A Class Action Is Superior to Numerous Individual Actions ............................................... 11

    B.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ............................................. 12

        1.    The Standard for Judicial Approval of Class Action Settlements .............................................. 13

        2.    The Settlement Easily Warrants Approval Under The *Girsh* Factors .................................................. 14
            a.    Continued Litigation Would Be Long, Complex, and Expensive ......................................... 14
            b.    The Reaction of the Class ............................. 15
            c.    The Parties Have Completed Extensive Discovery, Motion Practice, and Preparation for the Mediation ......... 17
            d.    Plaintiffs Face Considerable Risk In Establishing Liability ............................................ 18
            e.    Plaintiffs Face Considerable Risk In Proving Damages ............................................. 21
            f.    Defense Counsel Will Raise Arguments That Will Challenge the Maintenance of the Class Throughout Trial ............................................... 22
            g.    The Ability of the Defendants to Withstand a Greater Judgment Was A Considerable Factor In Settlement Negotiations ............................. 23

## TABLE OF CONTENTS

**Page**

  h. The Range of Reasonableness of the Settlement
    Fund In Light of the Best Possible Recovery and In
    Light of Litigation Risks .................................................... 24

 C. THE NOTICE PROVIDED TO THE CLASS SATISFIES DUE
   PROCESS ............................................................................. 26

IV. CONCLUSION ................................................................................. 27

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ace Heating & Plumbing Co. v. Crane Co.*,
    453 F.2d 30 (3d Cir. 1971)..................................................................................14

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ..............................................................................10

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................9, 10, 12

*In re AT&T Corp. Securities Litig., 2005 WL 6716404 (D.N.J. April 25, 2005)*.........................26

*Baby Neal ex rel. Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) .....................................................................................7

*Barows v. Chase Manhattan Mortg. Corp.*,
    465 F. Supp. 2d 347 (D.N.J. 2006) ....................................................................23

*Boone v. City of Phila.*,
    2009 U.S. Dist LEXIS 103277 (E.D. Pa. Nov. 3, 2009)......................................5

*Carnegie v. Household Intern, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ( Posner, J.) ........................................................13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...................................................................... *passim*

*Chattin v. Cape May Greene, Inc.*,
    581 A.2d 91 (N.J. App. Div. 1990) *aff'd,* 124 N.J. 520, 591 A.2d 943 (N.J.
    1991) ...................................................................................................................23

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds,* 625 F.2d 49 (5th
    Cir. 1980) ...........................................................................................................22

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    2009 U.S. Dist. LEXIS 119870 ....................................................................10, 11

*County of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2nd Cir. 1990)...........................................................................18

iii

*Danvers Motor Co. Inc. v. Ford Motor Co.*,
   543 F.3d 141 (3d Cir. 2008)..............................................................................8

*DeHart v. U.S. Bank, N.A.*,
   811 F. Supp. 2d 1038 (D.N.J. 2011) ...............................................................23

*Dewey v. Volkswagen of Am.*,
   728 F. Supp. 2d 546 (D.N.J. 2010) ............................................................12, 11

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993)......................................................................24

*Eggleston v. Chi, Journeyman Plumbers Local Union No. 130 U.A.*,
   657 F.2d 890 (7th Cir, 1981), *cert. denied*, 455 U.S. 1017 (1982)....................24

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)........................................................................................29

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.GM Trucks*,
   55 F.3d ................................................................................................ *passim*

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)............................................................... *passim*

*Grasty v. Amalgamated Clothing and Textile Workers Union*,
   828 F.2d 123 (3d Cir. 1987)...............................................................................9

*Hassine v. Jeffes*,
   846 F.2d 169 (3d Cir. 1988)...............................................................................7

*Hill v. Art Rice Realty Co.*,
   66 F.R.D. 449 (N.D. Ala. 1974).......................................................................22

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000).......................................................................29

*Kugler v. Romain*,
   279 A.2d 640 (N.J. 1971).................................................................................22

*Labbate-D'Alauro v. GC Services Limited Partnership*,
   168 F.R.D. 451 (E.D.N.Y. 1996).....................................................................13

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995) ....................................................................16

*Lazy Oil Co. v. Witco Corp.*,
   166 F.3d 581 (3d Cir. 1999)..............................................................................14

*Maniscalco v. Brother Intern. Corp.*,
709 F.3d 202 (3d Cir. 2013)..................................................................24

*Margolis v. Atlantic Coast Media Group LLC et al*,
2:11-cv-04355-SRC-CLW (D.N.J.)........................................................17

*Meshinsky v. Nichols Yacht Sales, Inc.*,
541 A.2d 1063 (N.J. 1988)....................................................................22

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)..............................................................................29

*N.J. Citizen Action v. Schering-Plough Corp.*,
842 A.2d 174 (N.J. App. Div. 1995)......................................................22

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) .................................................................18

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)...................................................................26

*Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*,
A-5207-05T3, 2008 WL 649024 (N.J. Super. Ct. App. Div. Mar. 12, 2008).........................23

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)..............................................................................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998)...................................................7, 15, 17, 25

*In re Prudential Ins. Co. of America Sales Practice Litig.*,
962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)...............................5, 9, 20

*Ritti v. U-Haul Int'l, Inc.*,
05-4182, 2006 U.S. Dist. LEXIS 23393 (E.D. Pa. Apr. 26, 2006)..........................9

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................19, 26

*Slade v. Shearson, Hammill & Co.*,
79 F.R.D. 309 (S.D.N.Y. 1978) .............................................................16

*Stoner v. CBA Information Services*,
352 F. Supp. 2d 549 (E.D. Pa. 2005) .....................................................25

*In re Thornburg Mortg., Inc. Securities Litigation*,
2012 WL 6004176 (D.N.M. Nov. 26, 2012) ..........................................18

v

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*,
    416, 655 A.2d 417 (N.J. 1995), *cert. denied*, 516 U.S. 1066, 116 S. Ct. 752,
    133 L.Ed.2d 700 (1996) ........................................................................................22

*Varcallo v. Massachusetts Mutual Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ..........................................................................12, 20

*Vargas v. Calabrese*,
    634 F. Supp. 910 (D.N.J. 1986) ...............................................................................7

*In re Vitamins Antitrust Litigation, 2000 WL 1737867 (D.D.C. March 31, 2000)* ......................28

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ..............................................................................................8

*Walsh v. Great Atl. & Pac. Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) ....................................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .........................................................................6, 15, 28

*Weiss v. Mercedes-Benz of North America*,
    899 F. Supp. 1297 (D.N.J. 1995) ............................................................................19

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1983) ......................................................................................6

*Welch v. Bd. of Dirs. Of Wildwood Golf Club*,
    146 F.R.D. 131 (W.D. Pa. 1993) ...............................................................................7

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) ......................................................................................6

*Zinberg v. Wash. Bancorp, Inc.*,
    138 F.R.D. 397 (D.N.J. 1990) ...............................................................................7, 8

**STATUTES**

N.J.S.A. § 56:8-19 ..........................................................................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................1, 5, 7, 29

Fed. R. Civ. P. 23(a) ........................................................................................6, 7 8, 9, 10, 14

Fed. R. Civ. P. 23(b) ..................................................................................6, 10, 11, 12, 14

1743487.1

Fed. R. Civ. P. 23 (c) ...................................................................................5, 6

Fed. R. Civ. P. 23(e) ..............................................................................5, 14, 15

W. Rubenstein, H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th
   ed. 2002) ...........................................................................................14

1743487.1

## I.       INTRODUCTION

Plaintiffs Susan Sabol, Valerie Done and Kathleen Klodner (collectively, "Plaintiffs"), respectfully submit this memorandum in support of their motion for final approval of the proposed Settlement pursuant to the terms and conditions of the Amended Settlement Agreement dated March 22, 2013 (the "Amended Settlement") (the Amended Settlement Agreement is attached as Exhibit D to the Declaration of Andrew N. Friedman). The proposed settlement of this class action provides for the payment of $3 million into a common fund for the benefit of the Class (the "Cash Fund"), up to an additional $4 million in non-cash benefits to be offered to the Class (the "Product Benefit"), and significant injunctive relief. To the extent there is any money remaining in the Cash Fund at the close of the Claim Period after the *pro rata* payment of the Cash Benefit, and the fees and expenses noted above, the remaining funds will be paid to a *cy pres* recipient, the Electronic Frontier Foundation. The Settlement provides comprehensive and extensive relief to the Class and easily surpasses the approval requirements of Rule 23. For the reasons set forth below, the Settlement should be approved.

The Settlement is the products of months of hard fought, arms-length negotiations, including a mediation session before the Honorable Stephen M. Orlofsky (ret.) which resulted in the agreement in principle that paved the way for the Settlement Agreement.

When judged in light of all the facts, including the ability to prove liability and damages and the limited amount of funds available to settle the claims in the litigation, there can be no reasonable doubt that the Settlement satisfies the elements of Rule 23 for final approval. Taking into account the financial realities faced by the parties, as well as all the attendant risks and costs of continued litigation, the Settlement represents an indisputably successful outcome for the Class. The Settlement supplies real relief for consumers and provides Defendants with global

1

resolution of all claims against them in a manner that allows Defendants to continue doing business, albeit under the terms of Amended Settlement Agreement, which includes prospective relief for the Class. Respectfully, the Settlement deserves final approval.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

As set forth here and in the accompanying Memorandum of Law in Support of Plaintiff's Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Participation Award and Declaration of Andrew N. Friedman, the Settlement is the product of months of investigation, hard-fought litigation and settlement negotiations.

This lawsuit (the "Action") was commenced against Defendants Hydroxatone and Atlantic Coast Media Group August 8, 2011 (Docket No. 1, 2:11-cv-04586-SRC-MAS), alleging on behalf of a national class that Hydroxatone had misrepresented several features of its services, including the scope and costs of its Risk-Free Trial Offer, charges associated with  those who attempted to cancel membership in Hydroxatone's Preferred-Customer Beauty Program, and Defendants failure to timely honor requests for refunds. Friedman Decl. ¶ 7.

On March 23, 2012, Plaintiffs Susan Sabol and Valerie Done, on behalf of the national class, filed their First Amended Complaint. (ECF No. 30).  In the Amended Complaint, Plaintiffs sought relief on behalf of a nationwide class for violations of the New Jersey Consumer Fraud Act, breach of contract, unjust enrichment, and for assorted declaratory relief.  The Amended Complaint also included alternative claims under the Utah Consumer Sales Practices Act. Friedman Decl. ¶ 8.

In response to the First Amended Complaint, Defendants filed a Motion to Dismiss on April 30, 2012 (ECF No. 33), and this motion was fully briefed, with no decision, prior to the settlement discussions.  Friedman decl. ¶ 9.

2

The parties served interrogatories and requests for production of documents on December 16, 2011.  Defendants produced documents on 5 separate dates, resulting in approximately 62,000 pages received.  The documents produced by Defendants included extensive information on customer complaints and electronic documents consisting of: organizational charts, manuals, scripts, transcripts for radio and television advertisements, audio files, Defendant's insurance policy related to the litigation and various other documents.  Plaintiffs' counsel reviewed and analyzed these documents.  Friedman Decl. ¶ 10.

Class Counsel had numerous settlement discussions with Hydroxatone counsel beginning in the summer of 2012.  Friedman Decl. ¶ 13.  On July 17, 2012, the parties met face to face in an effort to further explore settlement.  Friedman Decl. ¶ 14.  While some progress was made, there was still a gulf between the two parties.  *Id.*  Among other things, Defendant Hydroxatone asserted that its finances were in a tenuous position and that there was a wasting  insurance policy.  Friedman Decl. ¶ 15.

While the June and July negotiations did not yield a settlement, the parties continued to talk and agreed upon an August 14, 2012 mediation session before the Honorable Stephen M. Orlofsky.  In preparation for mediation, Defendants provided Class Counsel with additional information for settlement purposes in response to Plaintiffs' specific requests, including information related to Defendants' sales data, customer return/refund data, return/refund policies, record-keeping facilities, and insurance coverage.  Friedman Decl. ¶ 16.

At the August 14 mediation, Class Counsel pushed for the maximum amount they could get for the Class while recognizing Defendants' financial limitations.  Friedman Decl. ¶ 18.  After a full day of mediation, and with Judge Orlofsky's endorsement, Class Counsel and Defendants agreed on preliminary settlement terms.  Friedman Decl. ¶ 19.  Because of

Hydroxatone's purported financial constraints, the entire settlement was made contingent upon Class Counsel's receipt and review of specific company financial statements.  Friedman decl. ¶20.

On August 18, 2012, the parties submitted a Stipulation and Consent Order for Stay. (ECF No. 49) Friedman Decl. ¶ 21.  On August 20, 2012, the Court issued its order to stay the case for sixty days. (ECF No. 50).  Friedman Decl. ¶ 22.  After the Court's order staying the case was entered, efforts to finalize the settlement and conduct confirmatory discovery continued.  On October 22, 2012, the parties entered another Stipulation and Consent Order for Stay while settlement negotiations and confirmatory discovery continued.  (ECF No. 54).  Friedman Decl. ¶ 23.  On October 23, 2012, the Court stayed the case for another sixty days, pending final agreement.  (ECF No. 56).  Friedman Decl. ¶ 24.

On February 7, 2013 Plaintiffs Susan Sabol, Valerie Done and Kathleen Klodner filed a Second Amended Class Complaint (ECF No. 64) Friedman Decl. ¶ 26.  The Second Amended Complaint added Plaintiff Klodner's claims arising from her participation in Hydroxatone's Preferred-Customer Beauty Program.  *Id.*

A Memorandum of Understanding describing the principal terms of the Settlement was executed by the Parties on December 4, 2012.  Friedman Decl. ¶ 29.  After months of working on the explicit terms of the Settlement, settlement papers were executed by the Parties on February 7, 2013.  Friedman Decl. ¶ 25.

The parties filed preliminary approval papers with the Court on February 7, 2013 (ECF Nos. 66 & 67), and then submitted amended materials on February 25, 2013 (ECF Nos 76 & 77) Friedman Decl. ¶ 30.  The Court preliminarily approved the Amended Settlement on March 28, 2013 (ECF No. 80) Friedman Decl. ¶ 31.

4

On April 26, 2013, Notice was distributed to the Class by the Settlement Administrator, Gilardi & Co. LLC, in the manner specified in the Amended Settlement Agreement and the Court's March 28, 2013 preliminary approval order.  Friedman Decl. ¶ 33.

## III.   ARGUMENT

Before approval of a class action settlement the Court should determine whether to certify the class for purposes of granting final approval to the settlement, and then assess whether the terms of the settlement are fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e).  *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *Boone v. City of Phila.*, 2009 U.S. Dist LEXIS 103277, at *18 (E.D. Pa. Nov. 3, 2009).  The Court should also determine whether the class members received adequate notice of the settlement.  Fed. R. Civ. P. 23 (c)(2)(B).  As set forth below, each of the steps has been satisfied here.

### A.   The Settlement Class Is Appropriate For Certification

Class actions certified solely for the purpose of settlement are well-recognized under Fed. R. Civ. P. 23.  *See e.g., In re Prudential Ins. Co. of America Sales Practice Litig.*, 962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

The Court was correct in preliminarily certifying the Class for settlement purposes pursuant to Rule 23(a) and 23(b)(2) and (b)(3) in its Preliminary Approval Order, and the following Class should now be finally certified:

> All Persons residing in the United States who between January 1, 2005 and March 28, 2013 paid for, and/or were charged for Hydroxatone-branded products, and/or were charged shipping and processing fees for such products, in connection with a Risk-Free Trial and/or Auto-Shipment Program.

Excluded from the Settlement Class are Defendants, any entities in which Defendants have or had a controlling interest, any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, any Judge assigned to this action

and his or her immediate family, and anyone who timely requests exclusion from the Class.

## 1.   The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

The four prerequisites of Rule 23(a) require that: (1) the class be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1983); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 246 n.7 (3d Cir. 1975).  In light of the proposed Settlement, Plaintiffs and the Class meet the requirements of Rule 23(a), which are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

### a.   *Numerosity*

Rule 23(a)(1)( requires that the class be so numerous that joinder of all class members is impracticable.  Impracticability, however, does not mean impossibility.  *See e.g., Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990); *Vargas v. Calabrese*, 634 F. Supp. 910, 918 (D.N.J. 1986).  The Third Circuit has generally held that the numerosity requirement is met if a proposed class exceeds 100 members.  *Welch v. Bd. of Dirs. Of Wildwood Golf Club*, 146 F.R.D. 131, 135 (W.D. Pa. 1993).

Here, joinder of all Class Members is impracticable because there are approximately 2.6 million potential members of the Class, dispersed throughout the United States.  No one has claimed that the numerosity requirement is not met. Accordingly, the numerosity requirement is satisfied.

### b.   *Commonality*

Rule 23(a)(2) provides that class action may be maintained if "there are questions of law

or fact common to the class."  Rule 23 does not require that all members of the class be identically situated, as long as there are substantial common questions of either law or fact.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 310 (3d Cir. 1998); *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988).  In fact, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Because the commonality requirement may be satisfied by the presence of single common issue, it is "easily satisfied."  *In re Prudential*, 148 F.3d at 310.

The Supreme Court recently stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do."  *Id*. at 2556.

In this case, the commonality requirement is easily satisfied because common questions of law and fact exist as to all members of the Class.  There exist several common questions of law and fact that are central to Plaintiffs' case, including whether Defendants consistently prevented Class Members from receiving refunds from the return of "risk-free" products; whether Defendants prevented the timely cancellation of auto-ship products; and whether Plaintiffs have actionable claims under their causes of action.  Because the claims of all Class Members arise from the same nucleus of operative facts and pursuant to the same legal theories, commonality is therefore satisfied.  No one has claimed that this requirement is not met.

### c.   *Typicality*

Rule 23(a) requires that "the claims . . .of the representative parties [be] typical of the claims . . ."  The typicality requirement is satisfied as long as the named Plaintiffs and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *Zinberg*, 138 F.R.D. at 401.  Factual differences between the class representatives and other members of the class do not preclude a finding of typicality so long as the plaintiffs' claims arise from the same even or course of conduct and are based on the same legal theory.  *Danvers Motor Co. Inc. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by Defendants related to their disclosures regarding risk-free trial offers and auto-shipment programs, their alleged refusal to refund Class Members for returned products, their alleged refusal to allow Class Members to cancel their auto-ship orders and/or their uniform statements regarding their auto-ship programs.  This requirement is therefore met.

### d.   *Adequacy of Representation*

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In addressing the adequacy of the proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class."  *Ritti v. U-Haul Int'l, Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006).  The adequacy of representation requirement tends to merge with the commonality and typicality criteria.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).  Here, each of the Class Representatives are adequate in that they purchased Hydroxatone "free trial" products, were unable to receive reimbursement for returned products,

and/or were unable to cancel auto-ship orders.  They have also each actively participated in the litigation, and have been in communication with their attorneys regarding the litigation.

Plaintiffs' counsel are adequate if they have demonstrated an assurance of vigorous prosecution of the case, which is equated with the competence and experience of class counsel. *Grasty v. Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123, 129 (3d Cir. 1987); *In re Prudential Ins. Co. of America Sales Practice Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

Here, Class Counsel has invested considerable time and resources into the prosecution of this action.  *See* Friedman Decl. ¶¶ 34-43.  Class Counsel have a wealth of experience in litigating complex class action lawsuits and were able to negotiate a meaningful Settlement for the Class in this case.  As noted above, Plaintiffs' counsel have extensive experience litigating complex class action cases such as this; the firm resumes of Class Counsel are attached as exhibits A, B, and C of the declaration of Andrew Friedman.  The adequacy requirement is, accordingly, met here.

### 2.  The Settlement Class Meets the Requirements of Fed. R. Civ. P. 23(b)(3)

In addition to meeting the requirements of Rule 23(a), the Class must also satisfy Rule 23(b)(3), which has two components: predominance and superiority.  *See* Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'"  *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *25 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)). When assessing predominance and superiority, the court may consider that the class will be

certified for settlement purposes only, and that a showing of manageability at trial is not

required.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a

request for settlement-only class certification, a district court need not inquire whether the case,

if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for

the proposal is that there be no trial.").

Rule 23(b)(3) is satisfied in this action because (i) questions of law or fact common to the

Class members predominate over any questions affecting only individual Class membersm

especially in light of the proposed Settlement, which eliminates any individual issues, and (ii) a

class action is superior to other available methods for the fair and efficient adjudication of this

controversy.

### a.     *Common Questions of Law and Fact Predominate*

"To determine whether common issues predominate over questions affecting only

individual members, the Court must look at each claim upon which the plaintiffs seek recovery

… determine whether generalized evidence exists to prove the elements of the plaintiffs' claims

on a simultaneous, class-wide basis, or whether proof will be overwhelmed by individual issues."

*Dewey*, 728 F. Supp. 2d at 568.

Here, there are several common questions of law and fact that predominate over any

questions that may affect individual Class Members.  For example, were this case to proceed, the

primary issue would be whether Defendants were liable to the Class under the claims pled in the

Complaint based on the allegations that they allegedly systematically refused Class Members'

requests for refunds and/or requests to cancel the auto-ship program.  This is an issue that could

be subject to "generalized proof," and is a "question that is common to all class members."  *See*

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870,

at *26 ("The proof required [must focus] on Defendant's conduct, not on the conduct of

individual class members.")  So too is the case here.  Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

> **b.** ***A Class Action Is Superior to Numerous Individual Actions***

With respect to superiority -- The second prong of Rule 23(b)(3) – the Court "considers whether or not a class action is a superior method of fairly and efficiently adjudicating the controversy." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 569 (D.N.J. 2010).  Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination.  These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  *Id*. (quoting Fed. R. Civ. P. 23(b)(3)).

When certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable manageability problems, since the purpose of the settlement is not to have a trial.  *Amchem*, 521 U.S. at 620. Moreover, "[f]or the purpose of settlement, concentrating litigation in one forum is desirable." *Varcallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207, 234 (D.N.J. 2005).

Here, superiority is easily satisfied both in terms of class treatment and the specific terms of the Settlement.

A class action is the superior method of resolving the Plaintiff Class members' claims. All of the Class members' claims are based upon the same basic operative facts and legal standards.  It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis, than repeatedly, literally millions of times.

Further, if there Class members' claims were asserted on an individual basis, the reality is that those claims would never be asserted. Class members' claims are, at best, worth several hundred dollars, but the cost of adjudicating them fully would cost at least thousands, if not tens of thousands of dollars each, thus making them "negative value claims." The only practical way to resolve millions of smaller claims is on a class basis. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that when it would be uneconomical to bring suit individually, bringing claims in a class action is the only way for Plaintiffs to have their day in court ); *Carnegie v. Household Intern, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ( Posner, J.) ("The realistic alternative to a class action is... zero individual suits, as only a lunatic or a fanatic sues for $30"); *Labbate-D'Alauro v. GC Services Limited Partnership*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("Class actions are often the most suitable method for resolving suits involving the forced compliance with consumer protection laws because the awards in an individual case are usually too small to encourage the loan consumer to file suit.").

Here, the Settlement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendants, or by going forward with this case as a class action.

Clearly, a class action is the superior method for adjudicating the Class members' claims. None of the objectors have denied this. Further, a fair, reasonable, and adequate class action settlement is superior to protracted litigation and all of its inherent costs and risks. In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

## B.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

1743487.1

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement. Courts generally favor settlements of class actions.  "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval."  W. Rubenstein, H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002).

## 1.   The Standard for Judicial Approval of Class Action Settlements

Approval of a proposed class action settlement is a matter within the sound discretion of the court.  *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971).  The Third Circuit has outlined a set of nine factors, generally referred to as the *Girsh* factors, to determine whether a settlement is fair, reasonable, and adequate:

> (1) the complexity and duration of the litigation; (2) the reaction fo the class to the settlement; (3) the stage of the proceedings; (4) the risk of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action [through trial]; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.GM Trucks*, 55 F.3d at 785; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

The Third Circuit has a strong judicial policy that encourages class settlements, especially those that are the product of arm's-length negotiations, and courts consider this policy when deciding whether to approve a settlement.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be

conserved by avoiding formal litigation").  As such, in making its approval decision pursuant to Rule 23(e), the Court should limit its review of what is otherwise a private consensual agreement negotiated between the parties only to the extent necessary to make a reasoned judgment that the agreement is not the product of fraud, overreaching, or collusion, by or between the negotiating parties, and that the settlement itself is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).

Settlements enjoy a presumption that they are fair and reasonable when they are the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation.  *GM Trucks*, 55 F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation . . .").  As such, even though a court must evaluate a proposed settlement, the court may rely on the judgment of experienced counsel in doing so.

The *Girsh* factors strongly favor approval this settlements as fair, reasonable, and adequate.

### 2. The Settlement Easily Warrants Approval Under The *Girsh* Factors

An examination of each of the *Girsh* factors reveals that the Settlement is fair, reasonable, and adequate, and should be approved in light of the fact that it confers substantial benefits for the Class without the further delay, and attendant risks and expense of continued litigation.

### a. *Continued Litigation Would Be Long, Complex, and Expensive*

The first *Girsh* factor asks whether the settlement avoids a lengthy, complex and expensive continuation of litigation.  Time and again, courts have used the possibility of

expensive and protracted litigation as a factor favoring the acceptance of a settlement as reasonable. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("due to the relative complexity of the issues involved and the amount of data that would need to be processed, the costs of litigating this matter through trial would likely be high"); *Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978); *GM Trucks*, 55 F.3d at 812.

In the present case, a number of factors indicate that continued litigation would be excessively expensive and time consuming.  Such continued litigation would require the taking of numerous depositions, further extensive inquiry into Hydroxatone's business practices and the extent of damages to Class Members, and the probable introduction of expert witnesses.  Further, if Plaintiffs were successful at trial, it is likely that Defendants would appeal an adverse judgment, adding further time and uncertainty before a final resolution of the litigation could be reached.  For all these reasons, a certain result in the here and now is vastly superior to gambling on a very uncertain result years in the future. The first *Girsh* factor weighs strongly in favor of approval of the Settlement.

### b.      *The Reaction of the Class*

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement," *Prudential*, 148 F.3d at 318, and the Class's support "creates a strong presumption . . . in favor of the Settlement." *Cendant*, 264 F.3d at 235.

On April 26, 2013, Notice was sent out to 2.6 million Hydroxatone customers about the Proposed Settlement.  As the last date for objections has not yet occurred, this factor will be more fully addressed via Plaintiffs' Reply Memorandum, which is due to be filed on or before July 9, 2013.

Class Counsel is cognizant, however, of the likely objection to the settlement from counsel in *Margolis v. Atlantic Coast Media Group LLC et al*, 2:11-cv-04355-SRC-CLW

15

(D.N.J.), a similar putative class action filed around the same time as the instant case and whose claims would be extinguished by the approval of the instant settlement.  When it appeared that Class Counsel had settled this Action in August, 2012, they reached out to Margolis' Counsel to see if they were interested in joining class counsel in the Settlement in order to maximize the limited resources of the Defendant for the benefit of the Class.  Class Counsel in this Action participated in a telephone call with *Margolis* Counsel about the settlement negotiations in this case.  Specifically, Class Counsel informed *Margolis* Counsel about Defendants' limited resources for settlement purposes and requested that *Margolis* Counsel participate with Class Counsel in a joint settlement of the cases.  Shortly thereafter, those inquiries were rebuffed by *Margolis* Counsel who sought to continue the litigation against a Defendant they knew was not in strong financial health and to pursue peripheral claims against another defendant.  Friedman Decl. ¶ 28.

If their strategy remains consistent, the Margolis Objections will likely attack the Settlement from various angles, casting  aspersions on the actions and motives of the parties to this Action, but regardless of the spin they attempt to place on their objection, they boil down to one basic argument: the settlement isn't big enough.  However, this alone is not sufficient to attack the fairness and adequacy of a settlement, especially viewed in light of the financial realities faced by the parties to the Settlement.  *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (rejecting various grounds for objections that were in reality based on the size of the settlement fund) ("Draping this contention in vague accusations of collusion, [the objectors] apparently believe the class representatives and counsel short-changed the class by failing to secure a larger settlement."); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1324 (2nd Cir. 1990) (accepting the district court's rejection of objections based on the size of the

settlement which the objectors considered "unduly small in light of what they assert was the total possible recovery . . ."); *In re Thornburg Mortg., Inc. Securities Litigation*, 2012 WL 6004176, * 58-59 (D.N.M. Nov. 26, 2012) (holding that any objection to the absolute size of a settlement as being too small without analyzing the risks of litigation and the specific circumstances of the case are inadequate).  Class Counsel will more completely address the Margolis objection if and when it is formally lodged with the Court.

c. ***The Parties Have Completed Extensive Discovery, Motion Practice, and Preparation for the Mediation***

The third *Girsh* factor considered in determining the fairness, reasonableness, and adequacy of a settlement is the stage of proceedings and the amount of discovery completed at the time the settlement is entered into.  *GM Trucks*, 55 F.3d at 785; *Girsh*, 521 F.2d at 157.  This factor "captures the degree of case development that class counsel has accomplished prior to settlement."  *GM Trucks*, 55 F.3d at 813.  This examination allows courts to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Id.*

At the time that the Settlement was reached, a fully briefed Motion to Dismiss the First Amended Complaint, filed on April 30, 2012 (ECF No. 33) was awaiting adjudication and the parties had previously served interrogatories and requests for production of documents.  Friedman Decl. ¶¶ 9 & 10.  Defendants produced documents and financial information responsive to the discovery requests and additional information in anticipation of settlement discussions.  Friedman Decl. ¶¶ 12 & 16..  These documents were all reviewed and analyzed by Plaintiffs' counsel.  Friedman Decl. ¶ 11.  In total, Plaintiffs' counsel reviewed, analyzed and categorized over 62,000 pages of documents so that by the time of the mediation, they were well-versed in the strengths and weaknesses of the litigation.  *Id.*

The settlement was the result of intense arms-length negotiations that took place with the

assistance of an experienced mediator after considerable discovery was completed  Even so, fair, reasonable and adequate settlements arrived upon at an early stage of litigation may be appropriate where there is no evidence of collusion and the settlement results from substantial concessions by both sides.  *See In re Cendant Corp. Litig.,* 264 F.3d 201, 236 (3d Cir. 2001) (upholding approval of class action settlement where settlement was reached at early stages of discovery, noting that "the merits of the liability case against [Defendant] were fairly clear."); *Weiss v. Mercedes-Benz of North America*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) ("Admittedly, the case is still in the early stages of discovery."); *see also In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 88 (D.N.J. 2001) (approving early stage settlement while noting that settlement at an early age is often a "double edged sword.")

Further evidencing that the settlement is fair, reasonable and adequate is Class Counsel's extensive experience in consumer class action litigation.[1]  This experience, combined with the tens of thousands of documents reviewed and analyzed, allowed the parties to reach a fair, reasonable, and adequate settlement after engaging in considerable litigation.  In light of the extensive discovery engaged in by the parties, and Class Counsel's familiarity with the facts surrounding the case, the third *Girsh* factor weighs in favor of final approval of the Settlement.

### d.   *Plaintiffs Face Considerable Risk In Establishing Liability*

The fourth factor for consideration under the *Girsh* analysis is "the risks of establishing liability"  *Girsh*, 521 F.2d at 157.  This factor is considered in order to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them," *In re Cendant Sec. Litig.* 264 F.3d 201, 237 (3d Cir. 2001) (quoting  *GM Trucks*, 55 F.3d at 814).  This inquiry seeks to balance the likelihood of

---

[1] The firm biographies of Plaintiffs' counsel – which summarizes their experience in similar cases – are submitted to the Court as exhibits A, B & C to the Friedman declaration.

success if "the case were taken to trial against the benefit of immediate settlement." *In re Prudential Ins. Co. of America Sales Practice Litig.*, 962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 319 (3d Cir. 1998). In performing this inquiry, "a court need not conduct a 'mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel[.]'" *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 238 (D.N.J. 2005). Here, this factor weighs in favor of approving the Settlement.

Plaintiffs have alleged claims under the New Jersey Consumer Fraud Act, in addition to breach of contract and unjust enrichment. In their answer, Defendants denied Plaintiffs' allegation and raised numerous defenses.  Further Defendants have produced substantial legal authority which questions the viability of Plaintiffs' claims.  *See* Defendants' Memorandum of Law in Support of the Motion To Dismiss the First Amended Complaint (ECF No. 33). Defendant's Motion to Dismiss raises issues about the adequacy of the pleadings, the standing of the named plaintiffs, and issues relating to whether the Amended Complaint adequately pled that individual plaintiffs had suffered ascertainable loss or harm.  Defendant's Motion was fully briefed at the time that the parties requested that the Court grant them leave to finalize the terms of the proposed settlement.  If the settlement is not finalized, Plaintiffs face the risks of an adverse ruling on any of the substantive grounds raised in Defendant's Motion to Dismiss.

Even if Plaintiffs survive all the expected pretrial motions from Defendants, establishing liability at trial is not guaranteed.  Although Plaintiffs believe that their claims against Defendant are strong enough to establish liability at trial, Plaintiffs would nonetheless have faced considerable risks in establishing liability in this matter, especially for their consumer fraud claims.  Among other things, Plaintiffs would need to show that class members regularly and correctly attempted to return their products and/or cancel future shipments and that there was a

19

pattern and practice of Defendants' denying proper returns and cancellations.

Proving liability for claims under the New Jersey Consumer Fraud Act requires establishing delicate questions of fact.  "[T]o constitute consumer fraud ... the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer ...."  *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174 (N.J. App. Div. 1995) (quoting *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 416, 655 A.2d 417 (N.J. 1995), *cert. denied*, 516 U.S. 1066, 116 S. Ct. 752, 133 L.Ed.2d 700 (1996)), *certif. denied*, 837 A.2d 1092 (N.J. 2003).  While Plaintiffs are confident in their ability to establish liability at trial, there can be no question that whenever a party holds the burden of establishing specific facts at trial there is rarely, if ever, such a thing as a "slam dunk." *See e.g.*, *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978), *vacated on other grounds,* 625 F.2d 49 (5th Cir. 1980) (noting that "no contested lawsuit is ever a 'sure thing.'"). Specifically, proving a NJCFA claim is far from a "sure thing."  *See e.g.*, *Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1066 (N.J. 1988) (upholding trial court's finding that "defendants had committed no unconscionable commercial practices" in violation of New Jersey Consumer Fraud Act by selling plaintiff a defective racing boat); *Kugler v. Romain*, 279 A.2d 640, 651 (N.J. 1971) (noting that some of the concepts in the New Jersey Consumer Fraud Act are somewhat "amorphous").

Finally, the proponents of a settlement do not have the burden of showing conclusively that the class will fail to recover.  *Hill v. Art Rice Realty Co.*, 66 F.R.D. 449, 456 (N.D. Ala. 1974). Rather, parties favoring settlement need only show that success is not such a foregone conclusion that the settlement should be rejected.  *Id.*  Here, the existing risks Plaintiffs' face in establishing in liability are enough to tip this fourth *Girsh* factor in favor of settlement.

e.     ***Plaintiffs Face Considerable Risk In Proving Damages***

Even if Plaintiffs were to successfully establish Defendants' liability, Plaintiffs still would have likely met substantial challenges in proving damages.  The presentation of damage testimony is a complex matter.  *See Chattin v. Cape May Greene, Inc.*, 581 A.2d 91, 99 (N.J. App. Div. 1990) *aff'd,* 124 N.J. 520, 591 A.2d 943 (N.J. 1991) (noting that Plaintiffs' damages in suit under Consumer Fraud Act limited to what they would have received had defendant's representations been accurate, and to only those damages proximately caused by defendant's fraud); *Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.,* A-5207-05T3, 2008 WL 649024, *17-21 (N.J. Super. Ct. App. Div. Mar. 12, 2008) (discussing evidence required to establish damages under NJCFA).  In this action, damages would have been aggressively contested at trial.[2]

As Defendants raised in their Motion to Dismiss, in order to be successful in action under the NJCFA, a plaintiff must prove they have suffered an ascertainable loss of money or property as a result of the unlawful conduct.  *See* Defendant's Motion to Dismiss, ECF No. 33 at 23 (citing N.J.S.A. § 56:8-19; *DeHart v. U.S. Bank, N.A.*, 811 F. Supp. 2d 1038, 1049-50 (D.N.J. 2011); *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 360-61 (D.N.J. 2006). As Defendants illustrated in their Motion to Dismiss, failure to show ascertainable loss has sunk many plaintiffs' NJCFA claims.  *Id.* at 24.

While Class Counsel believe convincing testimony could be provided on the damages question and a judgment could ultimately be obtained for the full amount of damages available under the law, it is certainly possible that, in the unavoidable "battle of experts," a jury might

---

[2]     Of course, the inevitable post-trial motions and possible appeals could also negatively impact the scope or promptness of any recovery by the Class if the matter is not resolved.

disagree with Plaintiffs' position. *See Cendant*, 264 F.3d at 239 ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

Accordingly, this *Girsh* factor supports approval of the Settlement.

f.     <em><strong>Defense Counsel Will Raise Arguments That Will Challenge the Maintenance of the Class Throughout Trial</strong></em>

As explained elsewhere, Class Counsel believes that this case is suitable for class certification in the settlement context. Nonetheless, there is certainly always the risk that a Court would not find this action suitable for class certification. Further, even if class certification were granted by the Court, class certification can always be reviewed or modified before trial, and a class may be decertified at any time throughout the course of the litigation. As one court has observed in approving a class action settlement:

> Indeed, the Court recognized that its class certification order was subject to alteration or amendment before the decision on the merits. "To paraphrase Benjamin Franklin, plaintiffs now have their class action, the question is can they keep it."

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317 (N.D. Ga. 1993) (citations omitted). *See also Eggleston v. Chi, Journeyman Plumbers Local Union No. 130 U.A.*, 657 F.2d 890, 896 (7th Cir, 1981), *cert. denied*, 455 U.S. 1017 (1982) ("a favorable class determination by the court is not cast in stone.").

Here, choice of law issues, including issues arising from new case law decided since this action was commenced, impose the most serious issues for class certification and maintenance. *See e.g.*, *Maniscalco v. Brother Intern. Corp.*, 709 F.3d 202 (3d Cir. 2013) (upholding district court's finding that New Jersey was not the state with the most significant relationship to South Carolina consumer's claims). Moreover, the ability to prove that each Class Member properly attempted to either cancel or return their products could have raised serious impediments to the maintenance of a class action.

In short, there is always the risk that the action, or particular claims in the action, might not be maintained as a class through trial. *Prudential*, 148 F.3d at 321.  Thus, the risks of failing to obtain or maintain class certification through trial, though certainly not overwhelming in this case, favor approval of the Settlement.

> **g.** **The Ability of the Defendants to Withstand a Greater Judgment Was A Considerable Factor In Settlement Negotiations**

The seventh *Girsh* factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement."  *In re Cendant Corp. Litig.* 264 F.3d at 240 (citing *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 321-22 (3d Cir. 1998) *cert. denied*, 525 U.S. 1114 (1999)); *GM Trucks*, 55 F.3d at 818. This factor is particularly important here and weighs heavily in favor of approval of the settlement.

It became clear during the mediation that Defendants had a limited amount of funds available to settle the claims in the litigation.  Despite the existence of significant revenue obtained from its sales, Defendants professed that they were experiencing losses and that they had little cash to pay a class settlement.  These statements were confirmed through the production of various financial statements as part of confirmatory discovery conducted after the August 14, 2012 mediation.  The confirmatory discovery provided to Plaintiffs indicated that Defendants would have been unable to withstand a judgment for the full value of the Plaintiff's claims.  Indeed, the bulk of the Settlement proceeds will be funded via diminishing insurance coverage.  The seventh *Girsh* factor strongly favors approval of the Settlement.  *See Stoner v. CBA Information Services*, 352 F. Supp. 2d 549, 552 (E.D. Pa. 2005) (holding that where insurance carrier would likely have to pay any eventual final judgment "[a]voiding the possibility of insufficient funds for a judgment weighs in favor of approving settlement as

well."); *In re AT&T Corp. Securities Litig.*, 2005 WL 6716404 at *5 (D.N.J. April 25, 2005) (agreeing with plaintiffs that "the possibility of bankruptcy is quite real when the settlement or judgment numbers sufficiently increase.") (citations omitted); *In re Safety Components, Inc. Securities Litig.*, 166 F. Supp. 2d 72, 91 (D.N.J. 2001) (holding that Seventh *Girsh* factor strongly favored settlement where Defendant had undergone bankruptcy reorganization and there was indication that Defendant would operate in a "cash poor" state for the foreseeable future).

### h.   *The Range of Reasonableness of the Settlement Fund In Light of the Best Possible Recovery and In Light of Litigation Risks*

"The eighth and ninth *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." Warfarin, 212 F.R.D. at 257 (citation omitted).  The eighth and ninth *Girsh* factors—the range of reasonableness considering the best possible recovery and the risks of litigation—also support approval of the Settlement.  The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Given the size of the Settlement Class, the potential benefits available, and the aforementioned risks in proving liability and damages and in obtaining class certification, the Amended Settlement Agreement fairly and adequately rewards the class.  The Amended Settlement Agreement provides a significant cash reimbursement of (on a pro rata basis) $40 to $100 (or a product benefit valued at between ($ 19.95 and $ 59.95) for Class Members (Group One Claimants) who (a) took any actions designed to return their Risk-Free Trial product(s) and/or Auto-Shipment Program product(s) and paid more than shipping and processing and/or return postage in connection with those products and/or received additional shipments product

for which they paid, or (b) cancelled or attempted to cancel their Auto-Shipment Program

memberships but received additional shipments of products for which they paid more than

shipping and processing and/or return postage.  The Amended Settlement Agreement also

provides product benefits to Settlement Class Members who do not fall within the definition of

Group One Claimants.  Amended Settlement Agreement § 5.4.  These product benefits are worth

between $19.95 and $39.95 retail value and confer a substantial benefit to those class members

not included in Group One.[3]

     In addition, the Settlement provides for injunctive measures that are consistent with the

core claims in the Litigation.  As part of the Settlement, Defendants will also agree not to

directly or indirectly engage in specific acts or practices that were alleged to be deceptive or

unlawful.  Specifically, Defendants:  (i) will not use the word "free" by itself for offers where the

customer is required to cancel and return the product to avoid being billed for the price of the

free product; (ii) will disclose the terms of the Preferred-Customer Beauty Program and Beauty

Auto-Ship Program in a clear and conspicuous manner before getting the customer's final

acceptance of a risk-free trial offer; (iii) will provide a simple mechanism on their websites

which allows a customer to easily effectuate a cancellation of an auto-ship program; and (iv) will

provide customers who provide an email address and who cancel with email confirmation of

such cancellation within 10 days of the cancellation becoming effective.

     As set forth above, the inability of Defendants to withstand a greater judgment was a

major factor in the parties' decision to enter into the Amended Settlement Agreement.  Plaintiffs

faced serious risks in pursuing this litigation to trial, and those risks were compounded by the

---

[3] Proceeds from the Cash Fund will be used for the costs of notice, administration and shipment of product benefits so that no one who chooses the product benefit as compensation will pay anything out of their own pockets.  Amended Settlement Agreement §§ 1.2(l) & (gg); 5.5.

fact that even if Plaintiffs won a sizable judgment at trial, Defendants might not be able to withstand such a judgment.  Friedman Decl. ¶¶ 12, 16 & 20.

"A settlement is by nature a compromise between the maximum possible recovery and the inherent risks of litigation.  'The test is whether the settlement is adequate is and reasonable and not whether a better settlement is conceivable.'"  *Warfarin* F.R.D. at 257 (quoting *In re Vitamins Antitrust* Litigation, 2000 WL 1737867, at *2 (D.D.C. March 31, 2000)).  Truly, "the court must keep in mind that settlement is a compromise, a yielding in the highest hopes in exchange for certainty and resolution." *Id.* at 257.  Accordingly, the Amended Settlement Agreement is fair, adequate and reasonable under all of the *Girsh* factors.

### C.        THE NOTICE PROVIDED TO THE CLASS SATISFIES DUE PROCESS

In accordance with the Court's Order preliminarily approving the Settlement, the Settlement Administrator, Gilardi & Co. LLC, sent the Court-approved settlement to approximately 2.6 million potential Class Members.  Fukunaga Decl. at ¶ 3.  Per the terms of the Amended Settlement, the Settlement Administrator sent summary notice via electronic mail to all class members for whom Defendant provided valid e-mail address. *Id.* at ¶ 4.  On April 26, 2013, Gilard sent e-mail notice to approximately 1.1 million class members for whom e-mail addresses were made available.  *Id.* at ¶ 6.  Also on April 26, 2013, Gilardi mailed approximately 1.5 million Postcard Notices to class members for whom an email address was not available.  *Id.* at ¶ 5.  In addition, the Settlement Administrator established  a dedicated website www.hydroxatonesettlement.com, which provides the Long and Short Form Notice and other pertinent documents, including the Claim Form and Amended Settlement Agreement, "frequently asked questions" and contact information if potential Class Members have additional

1743487.1

questions, how to submit a Claim Form or an objection or how to opt out of the Settlement.[4]  *Id.*

at ¶ 9.  Further, the Settlement Administrator established a toll-free telephone number that Class

Members are able to utilize if they have questions about the Settlement and/or need assistance

completing their Claim Forms.  *Id.* at ¶ 8.  The Settlement Administrator also posted notice of

the settlement via P.R. Newswire on April 26, 2013.  *Id.* at 7.

This Notice program unquestionably meets the due process requirements of Fed. R. Civ.

P. 23, which calls for "the best notice practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort."  *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 173 (1974) (emphasis omitted).  *See also In re Ikon Office Solutions,*

*Inc.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) ("In order to satisfy due process, notice to class

members must be 'reasonably calculated under all the circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections.'")

(quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  In this

regard, potential Settlement Class Members have been (i) provided with direct notice of the

Amended Settlement Agreement; (ii) fully informed of their rights and obligations under the

Amended Settlement Agreement; and (iii) provided with the resources to ask questions and, to

the extent necessary, receive assistance in submitting Claim Forms.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully requests that the Court grant final

approval to the proposed Settlement, and finally certify the Settlement Class for Settlement

purposes only.

---

[4] The Settlement Website and the toll-free number will remain active at least until the
August 15, 2013 deadline for filing claims.

DATED this 31st day of May, 2013

       Respectfully submitted,


       By  /s/ Alan Sash       
       Alan Sash
       Lee S. Shalov
       260 Madison Ave.
       New York, NY
       McLAUGHLIN & STERN LLP
       Tel:(646) 278-4298
       Fax: (212) 448-0066

       Andrew N. Friedman
       COHEN MILSTEIN SELLERS & TOLL PLLC
       1100 New York Avenue, N.W., Suite 500 West
       Washington, DC  20005-3964
       Tel: (202) 408-4600
       Fax: (202 408-4699

       Angela Edwards
       LAW OFFICES OF ANGELA EDWARDS
       72 Canterbury Circle
       East Longmeadow, MA 01028
       (413) 525-3820

       ***Plaintiffs' Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a true copy of the attached Memorandum in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and supporting exhibits were served upon Defendants' counsel via ECF and electronic mail.


<u>  /s/ Alan Sash</u>
Alan Sash

Dated: May 31, 2013