Alan E. Sash
Lee S. Shalov
MCLAUGHLIN& STERN LLP
260 Madison Ave.
New York, NY 10016
T:  646-278-4298
F:  212-448-0066

Angela Edwards
LAW OFFICE OF ANGELA EDWARDS
72 Canterbury Circle
East Longmeadow, MA 01028
T:  413-525-3820

Andrew N. Friedman
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave., N.W., Suite 500W
Washington, D.C.  20005
T:  202-408-4600
F:  202-408-4699

*Attorneys for Plaintiffs*
*on behalf of themselves and all others*
*similarly situated.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------- X

SUSAN SABOL, VALERIE DONE, and
KATHLEEN KLODNER on behalf of
themselves and all others similarly situated,

        Plaintiffs,

      -against-

HYDROXATONE, LLC and ATLANTIC
COAST MEDIA GROUP

        Defendants.

------------------------------------- X

CIVIL ACTION NO.
2:11-cv-04586-SRC-MAS

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES,
AND PARTICIPATION AWARDS

FINAL SETTLEMENT HEARING
JULY 16, 2013

1743465.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

        A.    History of the Litigation.......................................................................... 2

        B.    The Settlement Agreement ...................................................................... 3

III.    THE REQUEST WARRANTS APPROVAL BY THE COURT ....................... 4

        A.    The Settlement Is A Good Result for The Settlement Class and Class
              Counsel Should Be Compensated............................................................ 5

        B.    The Percentage-of the –Fund Method Is the Appropriate Method For
              Calculating Attorneys' Fees In This Case ............................................. 7

        C.    The Requested 33 1/3% Fee Is Fair and Reasonable Under the Percentage
              of Recovery Analysis ............................................................................. 8

              1.    The Size of the Fund and the Number of Persons Benefitted.................. 10
              2.    The Presence or Absence of Substantial Objections by Members of
                    the Class................................................................................................ 10
              3.    The Skill and Efficiency of the Attorneys Involved ............................... 10
               4.    The Complexity and Duration of the Litigation ...................................... 11
               5.    The Risk of Nonpayment........................................................................ 12
               6.    The Amount of Time Devoted to the Case by Class Counsel .................. 13
               7.    The Awards In Similar Cases ................................................................. 14

        D.    The Requested Fee Is Fair and Reasonable Under A Crosscheck the
              Lodestar Method .................................................................................... 14

IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE............................... 16

V.    THE PARTICIPATION AWARDS  FOR THE NAMED PLAINTIFFS ARE
      APPROPRIATE AND REASONABLE.............................................................. 17

VI.    CONCLUSION................................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*In re AT & T Corp.*,
    455 F.3d 160 (3d Cir.2006)................................................................7

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2008 U.S. Dist. LEXIS 569
    (E.D. Pa. Jan. 3, 2008) ................................................................16

*In re Baby Products Antitrust Litigation*,
    708 F.3d 163 (3d Cir. 2013)................................................................8

*Bernhard v. TD Bank N.A.*,
    08-cv-04392-RBK-AMD, ECF No. 40 (D.N.J. Feb. 3, 2010)................................14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)................................................................5, 6

*Boone v. City of Phil.*,
    668 F. Supp. 2d 693 (E.D. Pa. 2009) ................................................................15

*Bredbenner v. Liberty Travel Inc.*,
    2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) ................................17

*Bredbenner v. Liberty Travel, Inc.*,
    2011 WL 1344745 (D.N.J. April 8, 2011)................................................................14

*Careccio v. BMW of N. Am. LLC*,
    2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010) ................................16

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir.2005)................................................................7

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................16

*In re Datatex Sys. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28, 2007)................................17

*Deposit Guar. Nat'l Bank Jackson, Miss. V. Roper*,
    445 U.S. 326 (1980)................................................................6

*Dewey v. Volkswagon of America*,
    728 F.Supp. 2d 546 (D.N.J. 2010) ................................................................7

*In re Diet Drugs Product Liability Litig.*,
  582 F.3d 524 (3d Cir.2009)...................................................................................7

*Dolgow v. Anderson*,
  43 F.R.D. 472 (E.D.N.Y. 1968) *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970) ...........6

*In re Fidelity/Micron Securities Litig.*,
  167 F.3d 735 (1st Cir. 1999)...................................................................................5

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*,
  55 F.3d 768 (3d Cir. 1995).............................................................................5, 9, 14, 15

*In re GNC Shareholder Litig.*,
  668 F. Supp. 450 (W.D. Pa. 1987)..........................................................................17

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)........................................................................8, 9, 11, 14

*Hall v. AT&T Mobility LLC,*
  No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 23, 2010) ...................16, 17

*In re Insurance Brokerage Antitrust Litig.*,
  579 F.3d ...........................................................................................................15

*Larson v. Sprint Nextel Corp.*,
  2010 U.S. Dist. LEXIS 3270 (D.N.J. Jan 15, 2010) ................................................15

*Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973).....................................................................................7

*Maley v. Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................8, 14

*Maniscalco v. Brother Intern. Corp.*,
  709 F.3d 202 (3d Cir. 2013)...................................................................................12

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 20008) ................................................................7, 11, 12, 13

*Mehling v. New York Life Ins. Co.*,
  248 F.R.D. 455 (E.D. Pa. 2008)..............................................................................11

*Menkes v. Stolt-Nielsen S.A.*,
  2011 U.S. dist. LEXIS 7066 (D. Conn. Jan. 25, 2011).............................................14

*O'Keefe v. Mercedes-Benz United States, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003)..............................................................................13

iii

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)..................................................................7, 9, 14, 15

*In re Rite Aid Corp. Sec. Litig.*
396 F.3d 294 (3d Cir. 2005).................................................................................7, 12

*In re Safety Components Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .......................................................................10, 16

*Sala v. National R.R. Passenger Corp.*,
128 F.R.D. 210 (E.D. Pa. 1989)..............................................................................14

*In re Schering-Plough/Merck Merger Litig.*,
2010 U.S. Dist. LEXIS 29121 ..............................................................................16

*Silberman v. Bogle*,
683 F.2d 62 (3d Cir. 1982)........................................................................................7

*Spann v. AOL Time Warner, Inc.*,
2005 WL 1330937  (S.D.N.Y. June 7, 2005) .........................................................14

*Stalcup v. Schlage Lock co.*,
505 F.Supp. 2d 704 (D. Colo. 2007)........................................................................12

*Swedish Hosp. Cor. V. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993).....................................................................................8

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*,
56 F.3d 295 (1st Cir. 1995)........................................................................................6

*Trustees v. Greenough*,
105 U.S. 527 (1881).....................................................................................................6

*In re Unisys Corp. Securities Litig.*,
2001 WL 1563721 (E.D. Pa. Dec. 6, 2001)............................................................14

*Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) .........................................9

*Yong Soon Oh v. AT&T Corp.*,
225 F.R.D. 142 (D.N.J. 2004)....................................................................................8


**STATUTES**

New Jersey Consumer Fraud Act, N.J. Stat. Ann. § § 56:8-1, *et seq.* ("NJCFA").........................2

1743465.1

**OTHER AUTHORITIES**

3 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, Section 14.03 at 14-5 (3d
   ed. 1992) ...........................................................................................................................15

Fed. R. Civ. P. 23(h) ...........................................................................................................5

Report of the Third Circuit Task Force, 108 F.R.D. 231, 241 (1985) ............................5

I.        INTRODUCTION

Plaintiffs Susan Sabol, Valerie Done and Kathleen Klodner (collectively "Plaintiffs"), individually and on behalf of the Settlement Class of similarly situated Hydroxatone customers, respectfully submit through Class Counsel, Cohen Milstein Sellers & Toll PLLC, McLaughlin & Stern LLP, and the Law Offices of Angela Edwards, this Memorandum of Law in Support of Plaintiff's Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Participation Awards.

Class Counsel undertook to prosecute the Class Action on a wholly contingent basis, spending thousands of hours and incurring approximately $20,000 in unreimbursed out-of-pocket, expenses.  Through their efforts, Class Counsel have obtained, for the benefit of the Class, a cash settlement of $3 million (the "Cash Fund), and up to an additional $4 million in non-cash benefits to be offered to the Class (the "Product Benefit"), and significant injunctive relief. The Settlement was preliminarily approved by this Court on March 28, 2013.  (ECF No. 80) Declaration of Andrew N. Friedman at ¶¶ 2 & 32.  This commendable result was achieved only through the competence and diligence of Class Counsel in the face of skillful opposition from defense counsel and numerous legal and factual hurdles.

As compensation for their efforts, Class Counsel seeks an award of attorneys' fees totaling $1,000,000, representing 33-1/3% of the Cash Fund, the separate reimbursement of $19,785.42 in costs and expenses, and participation awards to the Class Representatives totaling $3,500 ($1,000 each to Ms. Sabol, Ms. Done, and Ms. Klodner, and $500 to former representative Ms. Gray) for the services they have rendered to the Settlement Class.  Class Counsel respectfully submits that this fee application warrants approval, as does the request for the participation awards to the Class Representatives for their services to the Settlement Class.

1

## II.      FACTUAL BACKGROUND

### A.      History of the Litigation

This lawsuit asserts that Defendants Hydroxatone, LLC and Atlantic Coast Media Group, and their subsidiaries and affiliates (collectively, " Hydroxatone" or "Defendants") engaged in deceptive customer service practices relating to Hydroxatone's risk free trial offers and auto-shipment programs, which include the alleged failure to credit returns of beauty products and the alleged failure to cancel membership in auto-ship programs.  The Second Amended Class Action Complaint ("Complaint") (ECF No. 65) alleges causes of action under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § § 56:8-1, *et seq.* ("NJCFA"), and for breach of contract, unjust enrichment, and declaratory relief, as well as a cause of action under the Utah Consumer Sales Practices Act (UCSPA), pled in the alternative. Friedman Decl. ¶26.

The putative national class action lawsuit (the "Action") was initially commenced against Hydroxatone on August 8, 2011 (ECF No. 1) Friedman Decl. ¶ 7.  On March 23, 2012, plaintiffs Susan Sabol and Valerie Done, on behalf of the national class, filed the First Amended Complaint. (ECF No. 30) Friedman Decl. ¶ 8.  In response to the First Amended Complaint, Defendants filed a Motion to Dismiss on April 30, 2012 (ECF No. 33) Friedman Decl. ¶ 9.  That motion has been fully briefed and was awaiting adjudication until the case was stayed to allow the parties to pursue settlement negotiations.  *Id.*

Plaintiffs served interrogatories and requests for production of documents on December 16, 2011. In response to Plaintiffs' document requests, Defendants produced thousands of pages of documents to plaintiffs on five separate dates.  Friedman Decl. ¶ 10.  The documents produced by Defendants included a product specialist training manual; scripts for customer service personnel dealing with consumers; transcripts for radio and TV advertisements; internal emails; personnel files and Defendant's insurance policy relating to the litigation.  *Id.*  Plaintiffs' counsel

2

reviewed and analyzed these documents.  *Id.*  Additionally, Defendants would later produce

additional documents and financial statements in anticipation of settlement discussions and as

part of confirmatory discovery after an agreement in principle was agreed upon.  Friedman Decl.

¶ 12, 16 & 21.  In total, Class Counsel received and reviewed approximately 62,000 pages of

documents from defendants. Friedman Decl. ¶ 11.

> **B.     The Settlement Agreement**

In June 2012, settlement negotiations began between the two parties. Friedman Decl. ¶

13.  As a prerequisite to a settlement meeting, Plaintiffs requested – and received – certain

discovery regarding Defendants' sales and financial status.  *Id.* at ¶ 12.  On July 17, 2012,

Counsel for Defendants and a representative of Hydroxatone, conducted settlement discussions

with Class Counsel in New York. Friedman Decl. ¶ 14.  The parties were not in agreement on the

terms of any settlement after the July 17th meeting, but concluded that additional negotiations

with an experienced mediator might be fruitful.  *Id.*  At the July 17, 2012 meeting, Defendant

Hydroxatone informed Plaintiffs that the company was in a difficult place financially, and that

any settlement would need to be paid out of a wasting  insurance policy.  Friedman Decl. ¶ 15.

The parties agreed to an August 14, 2012 mediation session before the Honorable

Stephen M. Orlosky (ret.).  Prior to the mediation session, Defendants provided Class Counsel

with additional information for settlement purposes in response to Plaintiffs' specific requests,

including information related to Defendants' sales data, customer return/refund data,

return/refund policies, record-keeping facilities, and insurance coverage.  Friedman Decl. ¶ 16.

At the mediation session, Class Counsel fought for the maximum settlement amount they could

achieve in light of the financial realities facing Hydroxatone.  Friedman Decl. ¶ 18.  The August

14th mediation session resulted in the two parties reaching a tentative settlement agreement, the basic terms of which were endorsed by Judge Orlofsky.  Friedman Decl. ¶ 19.

After reaching the agreement in principle at the August 14th mediation session, the parties then engaged in months of negotiations over specific terms of the Settlement.  A Memorandum of Understanding describing the principal terms of the Settlement was executed by the Parties on December 4, 2012.  *Id.*

After months of working on the explicit terms of the Settlement, settlement papers were executed by the Parties on March 25, 2013 and the parties submitted their Joint Motion for Preliminary Approval of the Class Settlement (ECF Nos. 66 & 77) Friedman Decl. ¶ 26.  The proposed settlement of this class action provides for the payment of $3 million into a common fund for the benefit of the Class (the "Cash Fund"), up to an additional $4 million in non-cash benefits to be offered to the Class (the "Product Benefit"), and significant injunctive relief.

Additionally, on February 7, 2013, Plaintiffs Susan Sabol, Valerie Done and Kathleen Klodner filed a Second Amended Class Complaint (ECF No. 64) Friedman Decl. ¶ 26.  The Second Amended Complaint added Plaintiff Klodner's claims arising from her participation in Hydroxatone's Preferred-Customer Beauty Program.  On March 28, 2013, the Amended Settlement was preliminarily approved by this Court (ECF No. 80) Friedman Decl. ¶ 32.

On April 26, 2013 Notice was disseminated to potential Class Members by the appointed Settlement Administrator, Gilardi& Co. Friedman Decl. ¶ 31; Declaration of Jill Fukunaga ¶¶ 6-9, attached as Ex. J to the Friedman Decl.  The Final Fairness hearing will take place on July 17, 2013.

## III.    THE REQUEST WARRANTS APPROVAL BY THE COURT

Fed. R. Civ. P. 23(h) provides that in a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Pursuant to that rule and the Settlement Agreement, Plaintiffs now apply for a fee award of $1,000,000.00 as attorneys' fees for all of the law firms representing Plaintiffs, and the separate reimbursement of nearly $20,000 in costs and expenses.  Friedman Decl. ¶¶ 41 & 42. Plaintiffs also request Court approval of a $3,5000.00 payment from the Cash Fund, to be distributed as participation awards of $1,000 each to the three Class Representatives, and a $500 participation award to the former Class Representative.  Friedman Decl. ¶¶ 44 & 45.

These requests are reasonable considering the work performed and the results achieved. The Settlement is the product of strenuous and efficient efforts by Plaintiffs' Counsel through difficult phases of investigation, discovery, and adversarial litigation, in a case involving complex issues of fact and law.  For the reasons that follow, these requests should be approved.

## A.   The Settlement Is A Good Result for The Settlement Class and Class Counsel Should Be Compensated

It has been long recognized that a lawyer who recovers a "common fund" is entitled to reasonable attorneys' fees from the fund as a whole.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Fidelity/Micron Securities Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("Lawyers whose efforts succeed in creating a common fund for the benefit of the class are entitled not only to reasonable fees but also to recover from the fund as a general matter, expenses, reasonable in amount that were necessary to bring the action to a climax"); Court Awarded Attorney Fees: Report of the Third Circuit Task Force, 108 F.R.D. 231, 241 (1985) (a common fund allows "fair and just allowances for expenses and counsel fees."); In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 821 (3d Cir. 1995)(citing Third Circuit Task Force Report).  Under this "common fund" or "equitable fund

5

doctrine," first established in *Trustees v. Greenough,* 105 U.S. 527 (1881), attorneys for the victorious party may petition for a portion of the benefits resulting from their efforts as compensation for their work.  The underlying rationale for these awards is that "persons who obtained the benefit of a lawsuit without contributing to its costs are unjustly enriched…" *Boeing*, 444 U.S. at 478; *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 305 n. 6 (1st Cir. 1995) ("The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs.").

Courts have also noted that class actions are particularly well-suited for use of the common fund doctrine, because fee awards that recognize the success reflected by the recoveries are in the "best interests" of current and future class members.  *See e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Courts have also long recognized that without a policy of contingent fee awards fairly compensating counsel for their services provided and risks undertaken, substantial portions of the public might be denied remedies for violations of their consumer rights.  *See Deposit Guar. Nat'l Bank Jackson, Miss. V. Roper*, 445 U.S. 326, 338 (1980) (nothing that financial incentives created by the class action procedure have been instrumental "in vindicating the right of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."); *Dolgow v. Anderson*, 43 F.R.D. 472, 494 (E.D.N.Y. 1968) *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970) ("The prospect of handsome compensation is held out as an inducement encourage lawyers to bring [class-action] suits.").

The Third Circuit has also recognized the right of class counsel to be compensated for their services in obtaining a common settlement fund.  *See e.g.*, *Silberman v. Bogle*, 683 F.2d 62,

6

64-65 (3d Cir. 1982) *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973) ("The attorney's claim is that his conduct of the suit conferred a benefit on all the class members, that one or more class members has agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefitting him.").

### B.   The Percentage-of the –Fund Method Is the Appropriate Method For Calculating Attorneys' Fees In This Case

There are two established methods for evaluating the award of attorneys' fee under Third Circuit law:  (1) the lodestar approach, and (2) the percentage of the recovery approach.  *In re Diet Drugs Product Liability Litig.*, 582 F.3d 524, 540 (3d Cir.2009); *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir.2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir.2005) (citation omitted).  The Third Circuit has emphasized that when calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored "because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  *In re Rite Aid Corp. Sec. Litig.* 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998); *see also In re Diet Drugs*, 582 F.3d at 540 (citing *Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir.1998)); *Dewey v. Volkswagon of Americ*a, 728 F.Supp. 2d 546, 590-91 (D.N.J. 2010); *McCoy v. Health Net, Inc.* 569 F. Supp. 448, 475 (D.N.J. 2008).  The Third Circuit view favoring percentage-of-recovery fee allocation is shared across the country.  *See Maley v. Global Techs. Corp.*, 186 F. Supp. 2d 358, 270 (S.D.N.Y. 2002) ("[T]here is a strong consensus – both in this Circuit and across the country – in

7

favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.");

*Swedish Hosp. Cor. V. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit

Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund

method is the appropriate mechanism for determining the attorney fees award in common fund

cases.").

The percentage of recovery approach to awarding attorneys' fees is favored in consumer

protection cases such as this one where a common fund is established.  *See e.g.*, *In re Baby*

*Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013) (approving award of attorneys' fees

using the percentage-of-recovery analysis in suit where consumers who allegedly had paid

inflated prices for baby products brought antitrust class action against retailer); *Yong Soon Oh v.*

*AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004) (approving award of attorneys' fees using

percentage-of-recovery method in class action settlement of suit by telephone customers alleging

that telephone company engaged in unfair and unreasonable practices).

### C.   The Requested 33 1/3% Fee Is Fair and Reasonable Under the Percentage of Recovery Analysis

In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000), the

Circuit court set forth the analysis for determining the reasonableness of a percentage fee award.

The Circuit directed that in common fund cases, where the fees and the award come from the

same source and the fees are based upon a percentage of the clients' settlement, a trial court

should consider a set of several factors in setting a fee award.  Those factors are, among other

things:

> (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency of
> the attorneys involved; (4) the complexity and duration of the litigation; (5) the
> risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs'

8

1743465.1

counsel; and (7) the awards in similar cases.

Id. (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 336-40

(3d Cir. 1998); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability*

*Litigation*, 55 F.3d 768, 819-22 (3d Cir. 1995); MOORES' FEDERAL PRACTICE, MANUAL FOR

COMPLEX LITIGATION (THIRD) § 24.121, at 207 (1997).  Importantly, these factors are not applied

in a formulaic manner and, according to the facts of each case, one factor may outweigh all the

others.  *Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002).

For all the reasons set forth herein and in the accompanying Declarations, Class Counsel

respectfully request that this Court find that under the applicable legal standards, and in light of

the benefits achieved and the efforts expended in conducting this complex and difficult litigation,

that Class Counsel's request for attorneys' fees totaling 33 1/3% of the Cash Fund, plus the

reimbursement of reasonable costs and expenses incurred in the prosecution of this action, is fair

and reasonable and merits Court approval and further grant a participation award in the amount

$3,500, total, to Ms. Sabol, Ms. Done, Ms. Klodner, and Ms. Gray for their participation in the

litigation.  As is detailed below, these fees and awards are consistent with those granted by the

courts in the District of New Jersey, the Third Circuit, and nationwide.

### 1.      The Size of the Fund and the Number of Persons Benefitted

The settlement agreement confers a substantial benefit to a sizeable class. Specifically, it provides a cash benefit for the class of $3 million and up to $4 million in product benefits.[1]  For individual class members this means up to $100 in cash or up to $59.95 in product benefit.

Notice was sent out to 2.6 million potential class members on April 26, 2013.[2]  Friedman Decl. ¶ 34; Fukunaga decl. ¶¶ 6-9.  Settlement Class Members are benefitted by the Settlement, and can be assured of immediate and certain compensation under the terms of the Settlement Agreement.

### 2.      The Presence or Absence of Substantial Objections by Members of the Class

The deadline by which class members may object to the Settlement Agreement is June 17, 2013.  Because the period for objections has not yet run, Plaintiffs will address any and all objections in their reply brief.

### 3.      The Skill and Efficiency of the Attorneys Involved

The "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Safety Components Sec. Litig.*, 166 F. Supp. 2d 72, 96 (D.N.J. 2001).  Related factors include "'the quality of the result achieved, the difficulties faced, the

---

[1] Class Counsel is requesting $1,000,000 in attorneys' fees, which constitutes 33-1/3% of the *cash* benefit.  The Settlement, however, provides a much greater benefit for the Settlement Class, including up to $4 million in product benefit and substantial injunctive relief.  Because the fee request is reasonable including only the $3 million cash fund in the Settlement value, this application assumes the total value of the fee award is 33-1/3% of the Settlement value, even though when including the value of the product benefit and injunctive relief the requested fee is closer to 14% of the non-injunctive settlement benefits made available.

[2] There have been a number of requests for exclusions from individuals who have received notice of the proposed Settlement who do not believe that they are in the Settlement Class because they already procured refunds from Defendants or they otherwise do not fit the Settlement Class definition.  Plaintiffs will address these exclusions in their objection reply brief due July 9, 2013. *See* Preliminary Approval Order, ECF No. 80, at ¶ 25.

speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 476 (D.N.J. 20008) (quoting *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 465 (E.D. Pa. 2008)). The goal of the third *Gunter* factor is to ensure "that competent counsel continue to undertake risk, complex and novel litigation" for the benefit of large numbers of class members who might otherwise lack reasonable access to justice." *Gunter*, 223 F.3d at 198.

Further compounding the risks of litigation to Class Counsel was the representation of Defendants by the prestigious firm of Kelley, Drye & Warren.  Prior to reaching the Settlement, defense counsel defended this case vigorously, raising objections to many of plaintiffs' discovery requests and fully briefing a Motion to Dismiss that was before the Court at the time that the Settlement was arrived at.

Plaintiffs' Counsel pursued this litigation zealously and tenaciously, and those efforts are reflected in the result obtained in this case.  The benefits for the Settlement Class Members achieved by Plaintiffs' Counsel is a testament to Plaintiff's' Counsel's abilities.  They secured a significant result in a case that was vigorously defended by Defendants. Plaintiffs' Counsel respectfully submits that their submissions to the court in this case were of high quality.[3]  This factor supports approval of the fee request.

### 4.    The Complexity and Duration of the Litigation

As noted elsewhere, this complex class action litigation involved motion practice, significant  discovery, and culminated in an intensive mediation session before the Hon. Stephen M. Orlofksy (ret.).  Plaintiffs also faced serious legal and factual hurdles in establishing liability.

---

[3] The firm biographies of Plaintiffs' counsel – which summarizes their experience in similar cases – are submitted here as Exhibits A, B, & C to the Friedman Declaration.

Proving liability for claims under the New Jersey Consumer Fraud Act requires establishing delicate questions of fact.  Among other things, Plaintiffs would need to show that class members regularly and correctly attempted to return their products and/or cancel future shipments and that there was a pattern and practice of Defendants' denying proper returns and cancellations.

 Additionally, recently decided cases in the Third Circuit  would undoubtedly add difficulty and complexity to this litigation.  *See e.g.*, *Maniscalco v. Brother Intern. Corp.*, 709 F.3d 202 (3d Cir. 2013) (upholding district court's finding that New Jersey was not the state with the most significant relationship to South Carolina consumer's claims).

Several courts have recognized that "any class action presents complex and difficult legal and logistical issues which require substantial expertise and resources." *Stalcup v. Schlage Lock co.*, 505 F.Supp. 2d 704, 707 (D. Colo. 2007); *see also, McCoy*, 569 F. Supp. 2d at 477.  The amount of compensation sought by Class Counsel is reasonable in light of these factors.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion in concluding that – in light of legal issues, duration of the case, discovery, and the necessity of resorting to mediation to reach a final settlement – the matter was complex).  This factor supports approval of Class Counsel's fee request.

### 5.    The Risk of Nonpayment

Class Counsel faced significant risks in pursuing this litigation and these risks faced by Class Counsel in pursuing this litigation were compounded because counsel received no compensation during the entire course of this litigation, while devoting thousands of hours to aggressively prosecuting the Class Action.  Class Counsel invested over three thousand hours in litigating this case (amounting to over $1.4 million in lodestar) and advanced or incurred out-of-

pocket expenses of nearly $20,0000 with no assurance of eventual reimbursement and loss of use

of those funds for the duration of the litigation.  Friedman Decl. ¶¶ 35 & 37.  Class Counsel

worked on a contingent fee basis and their compensation, as well as reimbursement of their

considerable expenses, were totally dependent upon obtaining a successful result, and an award

of fees by the Court.  Friedman Decl. ¶ 42.

The risks of non-recovery, which were faced by Class Counsel from the outset of this

litigation, are sufficiently substantial to justify the fee request.  *See O'Keefe v. Mercedes-Benz*

*United States, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003) (the risk of non-payment in such a case

"is why class counsel will be paid a percentage that is several times greater than an hourly fee in

this case.").

While Plaintiffs believe they possessed viable claims against Defendants – they do

recognize the risk inherent in any litigation.  As such, this factor supports approving the fee

request.  *See McCoy*, 569 F. Supp. 2d at 477 ("Given the nature of this litigation and the

difficulty of the issues presented, Plaintiffs faced a substantial risk that they would recoup

nothing.  These risks counsel in favor of a substantial fee award.").

### 6.      The Amount of Time Devoted to the Case by Class Counsel

In terms of the sheer amount of genuine labor involved on the part of the Plaintiffs, there

were over 3,000 hours of contingent work performed by Class Counsel in litigating this matter.

Among other things, Class Counsel investigated and researched the claims pre-filing;

drafted pleadings, briefs, discovery requests; reviewed and analyzed thousands of pages of

documents produced by defendants; successfully negotiated (including through a mediation) over

many months the terms of a settlement; and negotiated and drafted settlement documents,

including the various notices and claim forms for the benefit of the Class.  The number of hours

13

worked by each legal professional amongst Class Counsel and the type of legal work done by those professionals are included as Exhibits to the declaration of Andrew N. Friedman.  This commitment of time and effort clearly supports Class Counsel's fee request.

### 7.   The Awards In Similar Cases

Fee awards of 33-1/3% are within the range of well-accepted awards in this Circuit.  *See Sala v. National R.R. Passenger Corp.*, 128 F.R.D. 210, 214 (E.D. Pa. 1989) (attorney fee awards in common fund cases can be as high as 45%); *see also Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *21 (D.N.J. April 8, 2011) (awarding 32.6% of the settlement fund); *Bernhard v. TD Bank N.A.*, 08-cv-04392-RBK-AMD, ECF No. 40 (D.N.J. Feb. 3, 2010) (approving one-third of common fund); *In re Unisys Corp. Securities Litig.*, 2001 WL 1563721 at *3 (E.D. Pa. Dec. 6, 2001) (awarding 33% award from settlement of $5.75 million). Moreover, this percentage reflects a consensus on reasonableness shared nationwide.  *See e.g.*, *Menkes v. Stolt-Nielson S.A.*, 2011 U.S. dist. LEXIS 7066 (D. Conn. Jan. 25, 2011) (granting fee request of 33 1/3 percent of common fund in class action settlement); *Spann v. AOL Time Warner, Inc.*, 2005 WL 1330937, at *8 (S.D.N.Y. June 7, 2005) (33.3% fee award approved); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (33.3% fee award).

### D.   The Requested Fee Is Fair and Reasonable Under A Crosscheck the Lodestar Method

The Third Circuit has stated that "[i]n common fund cases . . . it is advisable to cross-check the percentage award counsel asks for against the lodestar method of awarding fees so as to insure that plaintiffs' lawyers are not receiving an excessive fee at their clients' expense." *Gunter*, 223 F.3d at 199 (citing *In re Prudential*, 148 F.3d 283, 340-41 (3d Cir. 1998); *In re General Motors*, 55 F.3d at 820, 821 n. 40, 822.  Courts determine the lodestar amount "by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable

14

hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience." *Id.*

Under the lodestar "cross-check" method, the Court multiplies the hourly rates by the applicable hours to get a lodestar amount.  The lodestar multiplier is then obtained by dividing the proposed fee award by the lodestar amount.  *In re Insurance Brokerage Antitrust Litig.*, 579 F.3d at 280.  *See also, Larson v. Sprint Nextel Corp.*, 2010 U.S. Dist. LEXIS 3270, at *89-90 (D.N.J. Jan 15, 2010) ("The lodestar multiplier is calculated by dividing the attorneys' fees that Class Counsel seeks by Class Counsel's associated lodestar."

In this case, the lodestar "cross-check" confirms the propriety of the fee sought.  Class Counsel are reporting their lodestar using a method by which hours expended by each attorney are multiplied by the attorney's hourly rate.  Based on these figures, the actual lodestar of the three Plaintiffs' firms in this case ($1,430,115.75.25) is in excess of class counsel's requested fee amount ($1,000,000), resulting in a "negative" multiplier of 70%.[4]

Courts routinely find in complex class action cases that a multiplier of one to four of counsel's lodestar is fair and reasonable.  *See Boone v. City of Phil.*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009); *accord In re Prudential*, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Herbert Newberg & Alba Conte,  *Newberg on Class Actions*, Section 14.03 at 14-5 (3d ed. 1992)). In this case, Plaintiffs' Counsel's requested fee produces a multiplier that is well below the range and therefore, is reasonable.  *See In re Insurance Brokerage Antitrust Litig.*, 579 F.3d at 284-85 ("The lodestar multiplier that the District Court calculated was less than one and thus reveals the Class Counsel's fee request constitutes only a fraction of the work that they billed . . . we are satisfied that in the present case the District Court's lodestar cross-check confirmed the

---

[4] Class Counsel's lodestar will increase as they continue to work to achieve the approval of the Settlement and in conjunction with the administration of the Settlement if it is approved.

15

reasonableness of the fee request."); *see also Hall v. AT&T Mobility LLC,* No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355, at *73 (D.N.J. Oct. 23, 2010) ("A multiplier of less than one, as is the case here, is therefore quite reasonable for a lodestar."); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 U.S. Dist. LEXIS 569, at *18-19 (E.D. Pa. Jan. 3, 2008) ("Since the multiplier is less than 1 (a 'negative lodestar') and the requested fee is less than the amount that would be awarded using the lodestar method, we are satisfied that a lodestar cross-check confirms that the requested fee percent is fair and reasonable."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (a "multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel.").

## IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE

It is well settled that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Careccio v. BMW of N. Am. LLC*, 2010 U.S. Dist. LEXIS 42063, at *22 (D.N.J. Apr. 29, 2010) (quoting *In re Safety Components Int'l Sec. Litig*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001)).

In this case, Class Counsel have incurred $19,785.42 in properly documented expenses for the common benefit of Class Members.  See Friedman Decl. ¶ 40.  Plaintiffs' counsel put forward these necessary out-of-pocket expenses without assurance that they would ever be repaid.  The requested amount is therefore reasonable and should be approved.  *See, e.g., In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *58 (approving expenses that were "adequately document and reasonably and appropriately incurred in the prosecution of the case."); *In re Datatex Sys. Sec. Litig*., 2007 U.S. Dist. LEXIS 87428, at *27

16

(D.N.J. Nov. 28, 2007) (approving "costs associated with experts, consultants, investigators,

legal research, mediation, meals, hotels, transportation, word processing, court fees, mailing,

postage, telephone, and the costs of giving notice.").

## V.    THE PARTICIPATION AWARDS FOR THE NAMED PLAINTIFFS ARE APPROPRIATE AND REASONABLE

The services provided by the Class Representatives in this action should not go without

financial recognition.  While service as a representative plaintiff is not a profit-making position,

the law recognizes that it is appropriate to make modest payment in recognition of the services

that such plaintiffs perform in successful class litigation.  *See e.g., J/H Real Estate*, 951 F. Supp.

63, 66 (E.D. Pa. 1997); *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 451 (W.D. Pa. 1987)

The Settlement Agreement here recognizes this principle by providing $1,000

participation award payments to each of the three Class Representatives, and $500 to one former

Class Representative who initiated the Action.  These Class Representatives were the principal

catalysts to achieving this result for the Class.  The Class Representatives all produced

documents, and provided responses to interrogatories served by Defendants. In addition, they

participated in numerous conferences and meetings with their attorneys, and stayed informed of

significant developments in the case.

Consistent with the law and the terms of the Settlement Agreement, it is appropriate to

make these payments to these class representatives.  *See Bredbenner v. Liberty Travel Inc.*, 2011

U.S. Dist. LEXIS 38663, at *63-68 (D.N.J. Apr. 8, 2011) (approving participation award

payments of $10,000 to each of the named plaintiffs); *Hall v. AT&T Mobility LLC*, 2010 U.S.

Dist. LEXIS 109355, at *44, *76 (D.N.J. Oct. 13, 2010) (Approving, over objections, the

payment of $2,000 participation awards to each plaintiff, and noting that "[g]iven the duration of

17

the litigation and the extent of their personal participation, the Court finds that the named

Plaintiffs are entitled to compensation above and beyond their recoveries under the Settlement

Agreement . . .  The distribution of the incentive award reflects the named Plaintiffs'

involvement in the prosecution of the case and in discovery, including, in some instances,

depositions.").

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court award Plaintiffs'

counsel the payment of $1,000,000 in attorneys' fees, $19,785.42 in expenses, and approve the

payment of $3,500 to be distributed as $1,000 participation awards to each of the three Class

Representatives, and $500 to the former Class Representative, Ms. Gray.

DATED this 31st day of May, 2013

Respectfully submitted,

By /s/ Alan Sash_____
Alan Sash
Lee S. Shalov
260 Madison Ave.
New York, NY
McLAUGHLIN & STERN LLP
Tel:(646) 278-4298
Fax: (212) 448-0066

Andrew N. Friedman
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500 West
Washington, DC  20005-3964
Tel: (202) 408-4600
Fax: (202 408-4699

Angela Edwards
LAW OFFICES OF ANGELA EDWARDS
72 Canterbury Circle
East Longmeadow, MA 01028
(413) 525-3820

***Plaintiffs' Class Counsel***

1743465.1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, a true copy of the attached Memorandum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, And Participation Awards and supporting exhibits were served upon Defendants' counsel via ECF and electronic mail.

 /s/ Alan Sash_____
Alan Sash

Dated: May 31, 2013

1