Alan E. Sash
Lee S. Shalov
**MCLAUGHLIN & STERN LLP**
260 Madison Ave.
New York, NY 10016
T:  646-278-4298
F:  212-448-0066

Angela Edwards
**LAW OFFICE OF ANGELA EDWARDS**
72 Canterbury Circle
East Longmeadow, MA 01028
T:  413-525-3820

Andrew N. Friedman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave., N.W., Suite 500 West
Washington, D.C.  20005
T:  202-408-4600
F:  202-408-4699

*Attorneys for Plaintiffs*
*on behalf of themselves and all others*
*similarly situated.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

--------------------------------------- X

SUSAN SABOL, VALERIE DONE, and
KATHLEEN KLODNER on behalf of
themselves and all others similarly situated,

        Plaintiffs,

    -against-

HYDROXATONE, LLC and ATLANTIC
COAST MEDIA GROUP

        Defendants.

--------------------------------------- X

CIVIL ACTION NO.
2:11-cv-04586-SRC-MAS

CLASS ACTION

## PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
## PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF THE PROPOSED AMENDED SETTLEMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................... 1

II.    CLASS REACTION TO THE SETTLEMENT ................................................. 2

    A.    The Margolis Objection and Parallel Litigation ................................... 3

        1.    The Margolis Objection Completely Avoids Analysis of the Hurdles Faced By Her In Proving Liability on a Class Basis and Wildly Overstates Class Damages ............................................. 6

            a.    The Claims Asserted by Margolis Faced an Uphill Battle ............ 7
            b.    Margolis' Damage Claims are Completely Baseless ..................... 9

        2.    The Settlement Does Not Favor "Refund Claims" Over "IVR Claims" ............................................................................ 11

        3.    Margolis Does Not Refute the Conclusion That Defendant ACMG is In Poor Financial Condition ................................................. 12

        4.    The Additional Insurance Coverage Reference by Margolis is Irrelevant ............................................................................ 14

        5.    The Settlement Release is Standard and Not Overbroad ......................... 16

        6.    The Settlement Provides Strong Prospective Relief and By No Means Blesses Defendant's Conduct ......................................... 19

    B.    The Lussier Objection ......................................................... 20

III.    CONCLUSION .................................................................... 21

1757797.1

# TABLE OF AUTHORITIES

Page

CASES

*Agostino v. Quest Diagnostics Inc.*,
   256 F.R.D. 437 (D.N.J. 2009)........................................................................................7

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)......................................................................................11

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006).........................................................................................2

*Careccio v. BMW of N. Am. LLC*,
   No. 08–2619(KSH), 2010 U.S. Dist. LEXIS 42063, 2010 WL 1752347 (D.N.J. Apr.
   29, 2010) ......................................................................................................................20

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...................................................................................10, 21

*Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.*,
   511 U.S. 164 (1994)....................................................................................................15

*In re Computron Software, Inc.*,
   6 F.Supp. 313 (D.N.J. 1998) .......................................................................................11

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litig.*,
   270 F.R.D. 521 (N.D. Cal. 2010) .................................................................................8

*Dennis v. Saks & Co.*,
   20 Fed. R. Serv. 2d 994, at *4 (S.D.N.Y. July 10, 1975) ............................................9

*Dewey v. Volkswagen of Am.*,
   728 F.Supp.2d 546 (D.N.J.2010) ...............................................................................20

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)........................................................................................18

*First State Orthopaedics v. Concentra, Inc.*,
   534 F.Supp.2d 500 (E.D.Pa.2007) ...............................................................................2

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................14

*FTC v. Willms*,
   Case No. 2-11-cv-828-MJP (W.D. Wash. Feb. 22, 2012) (Ex. 24 to Margolis
   Objection) ...............................................................................................................9, 20

# TABLE OF AUTHORITIES

Page

*In re General Motors Corp. Pick-Up Truck Fuel Tan Products Liab. Litig.*
    55 F.3d 768 (3d Cir. 1995).................................................................................6

*Gennari v. Weichert Co. Realtors,*
    148 N.J. 582 (N.J. 1997) ..............................................................................15

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir.1975)......................................................................12, 19

*Grimes v. Vitalink Comm. Corp.,*
    17 F.3d 1553 (3d Cir. 1994).........................................................................17

*In re Guidant Corp. Implantable Defibrillators Prods. Liability Litig.,*
    MDL No. 05-1708, 2008 WL 682714 (D.Minn. 2008).........................................18

*Hall v. AT & T Mobility LLC,*
    No. 07–5325(JLL), 2010 U.S. Dist. LEXIS 109355, 2010 WL 4053547 (D.N.J. Oct.
    13, 2010) ..................................................................................................21

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000).....................................................................11

*Janus Capital Group v. First Derivative Traders,*
    131 S.Ct. 2296 (2011) .................................................................................15

*Joel A. v. Guiliani,*
    218 F.2d 1232, 144 (2d Cir. 2000)...................................................................6

*Karvaly v. eBay, Inc.,*
    245 F.R.D. 71 (E.D.N.Y. 2007) ......................................................................19

*Klein v. O'Neal, Inc.,*
    2009 WL 1174638 (N.D. Tex. Apr. 29, 2009) ...................................................18

*In re Lucent Technologies, Inc., Secur. Litig.,*
    307 F.Supp.2d 633 (D.N.J. 2004) ...................................................................12

*Maniscalco v. Brother Intern. Corp.,*
    709 F.3d 202 (3d Cir. 2013)............................................................................7

*Margolis v. Atlantic Coast Media Group LLC et al,*
    2:11-cv-04355-SRC-CLW (D.N.J.)........................................................... *passim*

*McCoy v. Health Net, Inc.,*
    569 F. Supp. 2d 448 (D.N.J. 2008) ..................................................................2

# TABLE OF AUTHORITIES

Page

*Menagerie Prod. v. CitySearch*,
    2009 WL 3770668 (C.D.Cal. Nov. 9, 2009)...........................................................................8

*New Jersey Dept. Env't Prot. v. Gloucester Env't Mgmt. Serv., Inc.*,
    800 F.Supp. 1210 (D.N.J.1992) ...........................................................................15

*In re Newbridge Networks Securities Litig.*,
    No. 94-1678-LFO, 1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 23, 1998) ...........................11

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)...........................................................................7

N*ichols v. SmithKline Beecham Corp.*,
    CIV.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005)...............................11

*In re Prudential Ins. Co.*
    962 F.Supp. 450 (D.N.J. 1997)...........................................................................18, 19

*In re Prudential Ins. Co. of Am.*,
    MDL 1061, 1999 WL 496491 (D.N.J. May 6, 1999) ...........................................17

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998)...........................................................................6, 18

*In re Remeron End-Payor Antitrust Litig.*,
    No. 02-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005).......................................2

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003)...........................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2001)...........................................................................2

*In re Safety Components, Inc. Securities Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 20001) ...........................................................................14

*Sandler Assocs., L.P. v. Bellsouth Corp.*,
    818 F.Supp.695 (D.Del.1993) *aff'd*, 26 F.3d 123 (3d Cir. 1994) ...........................17

*Securities and Exchange Commission v. Teo*,
    2011 U.S. Dist. LEXIS 103413 (D.N.J. Sept. 12, 2011) .......................................19

*Seifer v. Topsy's Itern., Inc.*,
    70 F.R.D. 622 (D.Kan. 1976)...........................................................................14

1757797.1

# TABLE OF AUTHORITIES

Page

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)................................................................................................15

*Stull v. Baker*,
    410 F. Supp. 1326 (S.D.N.Y. 1976)........................................................................8

*Stull v. Pool*,
    63 F.R.D. 702 (S.D.N.Y. 1974) ..............................................................................9

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) cert. denied, 132 S. Ct. 1876, 182 L. Ed. 2d 646 (U.S.
    2012) *reh'g denied*, 132 S. Ct. 2451, 182 L. Ed. 2d 1076 (U.S. 2012)............................17, 18

*Susman v. Lincoln Am. Corp.*,
    561 F.2d 86 (7th Cir. 1977), *cert. denied,* 445 U.S. 942 (1980)................................8

*Sweet v. Bermingham*,
    65 F.R.D. 551 (S.D.N.Y. 1975) ..............................................................................8

*In re Vioxx Prods. Liability Litig.*,
    574 F.Supp.2d 606 (E.D. La. 2008)........................................................................18

*In re Warfarin Antitrust Litig.*,
    391 F.3d 516 (3rd Cir. 2004) ..................................................................................21

*Willson v. New York Life Ins. Co.*,
    No. 94-127804, 1995 N.Y. Misc. LEXIS 652 (N.Y. Sup. Ct. Nov. 8, 1995)..................18, 19

*Zylstra v. Safeway Stores, Inc.*,
    578 F.2d 102 (5th Cir. 1978) ..................................................................................8

**STATUTES**

11 U.S.C. § 101(32).................................................................................................13

**OTHER AUTHORITIES**

Black's Law Dictionary (9th Ed. 2009)....................................................................13

I.    **INTRODUCTION**

After a hard-fought mediation, Class Counsel were able to settle on terms beneficial to members of the Class all claims related to the alleged deceptive marketing of Hydroxatone risk-free trials. After preliminary approval of the Settlement, direct notice was sent to approximately 2.6 million Class members. Out of that number a virtually incalculably minute number of persons (two) objected to the Settlement and tens of thousands of Hydroxatone customers have made claims to share in the settlement proceeds.

The sole detailed objection to the Settlement is from counsel in a parallel litigation against Defendants brought by the wife of one of the attorneys attempting to represent the Class. *Margolis* Counsel's efforts to derail this settlement have existed since they were told about the mediation and invited by Class Counsel to join in the settlement back in August, 2012. Since that time Margolis counsel have embarked on a multi-pronged effort to attack the settlement, to somehow re-jigger their case in a desperate attempt to manufacture a separate class, and to manipulate facts about their sole plaintiff's standing to assert those claims. Margolis Counsel's flagrant tactics have continued in the form of this objection. The Margolis Objection makes explicit and implicit factual and legal conclusions about the litigation, the settlement and the settlement process itself which, at best, have "questionable" evidentiary support. Recognizing Margolis Counsel's true motivation here, this Court should dismiss Margolis Counsel's frivolous objections.

As noted below and in Class Counsel's Memorandum in Support of Plaintiffs' Motion for Final Approval of the Proposed Amended Settlement, the Margolis Objection is wholly without merit. The Settlement herein was reached through arms-length negotiations and, if approved,

1

will provide significant benefits to the Class. Class Counsel, therefore, respectfully request that the Settlement be approved as fair, reasonable and adequate.

## II.    CLASS REACTION TO THE SETTLEMENT

As noted above, of the nearly 2.6 million notices that were disseminated there have been a mere two objections[1]. That works out to an infinitesimal objection rate of approximately one objection for every 1.3 million potential class members and weighs heavily in favor of approval of the settlement. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2001) (two objections out of a class of 300,000  called a "rare phenomenon" that weighted in favor of approval); *In re AT & T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006) (eight objections out of over one million potential class members weighed in favor of approval). Further, as described in detail below, the only detailed objection comes from counsel in a parallel litigation – a party with a clear financial interest in this litigation. In addition, although the date for submission of class claims has not yet occurred, over 36,000 claims have already been received by the Administrator.[2]

---

[1] The Settlement Administrator also received two additional communications that included the words "object" or "objection" but upon examination were not actual objections.  In addition, there were only 2,227 exclusions requested. While the incredibly small percentage of exclusions (0.094%) is itself dispositive (*See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 459 (D.N.J. 2008) (1,700 opt-outs from potential class of 2.6 million, representing .066%, "qualifies for the presumption of fairness" in the Third Circuit) (citing In re Warfarin Sodium); *see also  First State Orthopaedics v. Concentra, Inc.*, 534 F.Supp.2d 500, 516 (E.D.Pa.2007) (finding presumption of fairness met when "only 0.16% of the class opted out or objected to the settlement"); *In re Remeron End-Payor Antitrust Litig.*, No. 02-2007, 2005 WL 2230314, at *16 (D.N.J. Sept. 13, 2005) (finding that 70 opt-outs and 8 objections from class of 850,000 qualified for presumption of fairness)) it bears noting that many of the exclusions received appeared to be the product of persons that were either not Class Members, had received refunds, or who said they like the Hydroxatone products they received.

[2] See Declaration of Jill Fukunaga, at ¶ 6, attached as Exhibit 1.

2

A.      **The Margolis Objection and Parallel Litigation**

The Margolis Objection is made on behalf of the wife of Ronald Margolis, one of

plaintiff's counsel in *Margolis v. Atlantic Coast Media Group LLC et al*, 2:11-cv-04355-SRC-

CLW (D.N.J.), a similar putative class action filed around the same time as the instant case and

whose claims would be extinguished by the approval of the instant settlement. The Margolis

Objection is an odd combination of invective, hyperbole, and manufactured facts. But the Court

need look no further than certain underlying facts to determinate this Objector's true motivation.

When it appeared that Class Counsel had settled this Action in August, 2012, they reached out to

Margolis' Counsel to see if they were interested in joining class counsel in the Settlement in

order to maximize the limited resources of the Defendant for the benefit of the Class. After it

became clear that Margolis Counsel was motivated mostly by its goal of securing payment of

their attorneys' fees, Margolis Counsel rebuffed Counsel's efforts to bring them into the

Settlement.  Since that date, as the Court is aware, Margolis Counsel has engaged in a scorched

earth battle to attack the proposed Settlement and commandeer the litigation from Class Counsel.

Moreover, as described below, Margolis Counsel has changed its approach to its own case to try

to create a distinction between its case and the *Sabol* litigation to somehow carve out a

"different" class from the one to be settled in this litigation.

The June 16, 2013 Margolis Objection is merely a continuation of Margolis' Counsel's

desperate attempt to derail a legitimate settlement for its own financial benefit and thus should be

given little deference.

The Margolis Objection makes six basic arguments that will be discussed in turn below:

(1) the benefits made to the class are far smaller than actual Class damages; (2) the settlement

improperly gives preferential treatment to a small group of class members by making a cash

award only to the *Sabol* "refund" class members; (3) that defendants are able to withstand a

greater judgment, and that two additional defendants, Thomas Shipley and Marketing Architects are paying nothing in exchange for their release; (4) that Class Counsel disregarded  additional insurance coverage; (5); the settlement release is overbroad because it releases claims based on a separate factual predicate, and which are currently pending in the parallel *Margolis v. Atlantic Coast Media Group* litigation;  and (6) the Settlement  does not deter future deceptive conduct. Margolis Objection 1-2.

While the Margolis Objection lists a litany of deficiencies in the Settlement, at bottom, the Objection is based on two flawed premises. First, the over-arching implication of the Objection is that seasoned Class Counsel somehow "colluded" with Defendants in order to prematurely dismiss the litigation on favorable terms to Defendants. Of course, nothing could be further from the truth. As noted in their Opening Brief, Class Counsel -- some of who have practiced in this field for decades -- made an informed decision based on the merits of the claims and the financial strength of the main Defendant to get the best amount for the Class under the circumstances. Any doubt that this was not a hard fought and arms-length Settlement is belied by the mediator – retired Judge Stephen Orlofsky – who has opined that these negotiations were by the book. See Orlofsky Decl., attached as Exhibit 2.

Second, the Margolis Objection is also based on the fundamentally flawed premise that the "refund class" (purportedly the *Sabol* class members) and the "IVR class" (purportedly the *Margolis* class members) are two independent classes. They are not.   – The so-called "*Margolis* Class" is subsumed by the *Sabol* class and a quick review of the chronology of the *Margolis* litigation makes it apparent this artificial distinction was concocted by Margolis Counsel for the purpose of avoiding the confines of the instant Settlement.

When first filed in July, 2011, the Margolis complaint alleged that defendants Atlantic Coast Media Group LLC and Hydroxatone LLC deceived class members by stating that the

4

Hydroxatone products were "free trials" or "risk-free trials," yet were anything but free.

Nowhere did the original complaint limit the Class claims to any one of Defendants' manner of

dissemination of the deceptive statements. The putative class definition included in the initial

complaint was all persons "who: (a) Participated in a free trial of any product from the

Defendants, for payment of only shipping and handling; (b) provided a credit card or debit card

number; and (c) Were billed on that card by Defendants more than shipping and handling,

without subsequent written authorization to do so." (Margolis Complaint, ECF No. 1, ¶26).[3]  It

was only after learning that Class Counsel was having fruitful settlement negotiations with

counsel for the Defendants, that Margolis counsel amended their Complaint to focus exclusively

on the part of the Class that received these allegedly deceptive statements via an automatic

interactive voice response system   ("IVR"). The putative class described in the *Margolis* First

Amended Complaint was reconfigured to include only customers who "[p]articipated through an

IVR system in a free trial . . ." (2:11-cv-04355 ECF No. 59 ¶ 54) Most amazingly, is that, as

Margolis' own  exhibits indicate, **despite allegations to the contrary in her First Amended**

**Complaint Ms. Margolis did not purchase her Hydroxatone products via the IVR system** –

she did so through a live agent at a telemarketing call center.  See Exhibit 25 to Margolis

Objection at 2 ████████████████████████████████

████████████████████████████

   The *Sabol* complaints have always recognized that there may have been deception in

Hydroxatone/Atlantic Coast Media's marketing of the products through all means of their

dissemination. *See* Class Action Complaint, ECF No. 1 at ¶¶  8, 15, 21, 23-35;  SAC, ECF No.

---

[3] Interestingly, in describing the "nature of the case" in the initial complaint, Margolis Counsel did not even mention IVR as a medium through which Hydroxatone was sold: "Defendants sell a line of skin care products directly to consumers on television, radio, print media and over the internet." (Margolis Complaint, Pg. 1-2). In fact the initial complaint makes no reference to IVR whatsoever.

65 at ¶¶ 2, 23, 43, 52-56, 68-77. However, for strategy purposes (as described in more detail below), Class Counsel have always focused on the simple and straightforward claim that the true wrongdoing by Defendants was their failure to live up to their contractual promises to cancel future shipments and to return unwanted products – for any reason –to those persons who were dissatisfied.   In other words, a person that received Hydroxatone products via *any* marketing method (i.e. internet, live phone sales or IVR )– who was dissatisfied with their receipt of product for *any* reason (e.g. they thought they had been deceived about whether the products were truly "free" or they simply didn't like the products received), was entitled to a refund of the price paid for that product(s).  That alleged breach by Defendants covers everyone that purchased Hydroxatone products through the "risk free" offers.  Thus, the claims of those consumers that assert they were deceived by the IVR process are logically part of the  *Sabol* Class.

1.    The Margolis Objection Completely Avoids Analysis of the Hurdles Faced By Her In Proving Liability on a Class Basis and Wildly Overstates Class Damages

In deciding the fairness of a proposed settlement, the court must ". . . guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 316-17 (3d Cir. 1998) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tan Products Liab. Litig.* 55 F.3d 768 (3d Cir. 1995)) While the Margolis Objection expresses its highest hopes for a larger recovery with stringent prospective relief, defendant's hopes just as surely contain less stringent terms and a smaller recovery. "[A] settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate, and fair." *Joel A. v. Guiliani*, 218 F.2d 1232, 144 (2d Cir. 2000).  As noted above, while there is no separate

6

"Margolis Class," the Margolis Objection  completely overlooks the practical roadblocks to

proving  her claims on a class-wide basis and wildly overstates the damages incurred by the IVR

purchasers.

a.      The Claims Asserted by Margolis Faced an Uphill Battle

Unlike the straightforward claims that were alleged in the *Sabol* complaints related to the

failure to return funds or honor cancellation requests, the *Margolis* action took a more legally

daunting tack.  Margolis counsel alleged that Defendants' engaged in a fraudulent scheme to

induce customers to sign up for free trials on IVR and that, as a result, class members "believe[d]

they were receiving a 'free' product in return for the payment of only shipping and processing."

Margolis Brief in Opposition to Motion to Dismiss at p. 1 (2:11-cv-04355, ECF No. 78 Feb. 2,

2013).  Thus, the Margolis claims, by definition , put defendants' statements – and the Class

Members' reliance thereon – front and center.  Where proof of reliance or causation is required,

class certification is, at best, problematic *See e.g. Newton v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 259 F.3d 154, 190 (3d Cir. 2001) (class certification inappropriate for fraud claims

because the action failed to satisfy predominance and superiority requirements); *Agostino v.*

*Quest Diagnostics Inc.*, 256 F.R.D. 437,  468-69 (D.N.J. 2009) (analyzing various issues that

make class-wide disposition of fraud claims problematic or impossible).  It would also have been

incredibly difficult for Margolis to get a national class certified for any claim.  Class Counsel

recognized that few federal courts now permit application of one state law to a class of

nationwide consumers simply by virtue of the fraud emanating from a company in one state.

That was confirmed by the Third Circuit's recent decision in *Maniscalco v. Brother Intern.*

*Corp.*, 709 F.3d 202 (3d Cir. 2013), where the court found that New Jersey was not the state with

the most significant relationship to the South Carolina consumer's claims,  even though the

company's principal place of business and headquarters was in New Jersey. Thus, it was highly

7

unlikely that the Margolis claims of deception could have been certified on a nationwide basis. In light of the fact that the sole plaintiff in *Margolis* was from Ohio, at best, Margolis could likely have only certified an Ohio class.[4]

Moreover, because Ms. Margolis did not purchase her Hydroxatone products via IVR, she could not even represent any so-called "IVR Class."[5] And, it goes without saying, that even, *arguendo*, if there were any IVR Class, Margolis' counsel could never be selected as counsel for the Class for the simple reason that Ms. Margolis is the wife of one of the named counsel, Ronald Margolis. As a result, counsel and/or the plaintiff would have been disqualified. It is well established that when close family members are named plaintiffs, attorneys seeking to represent them on behalf of a class are subject to presumptive disqualification. *See Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 103 (5th Cir. 1978) (attorneys who were partners or spouses of named plaintiffs or who were themselves members of the class should be subject to a per se rule of disqualification and should not be permitted to serve as counsel for the class.); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (7th Cir. 1977) (plaintiffs were inadequate to act as class representatives in case where representative plaintiff's attorney was his brother), *cert. denied,* 445 U.S. 942 (1980); *Stull v. Baker*, 410 F. Supp. 1326, 1337 (S.D.N.Y. 1976) (plaintiff had

---

[4] As noted in Plaintiffs' Memorandum In Support of the Settlement, even plaintiffs in *Sabol* faced this hurdle, although the *Sabol* claims, which were based more on failure of Defendants to adhere to their contractual terms about returning/cancellation, stood a far better chance of securing the certification of a national class. Plaintiffs' Mem. at p.21; *See also e.g. In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (breach of contract claims more suitable for national class certification than many other state law claims); *Menagerie Prod. v. CitySearch*, 2009 WL 3770668 (C.D.Cal. Nov. 9, 2009) (same).

[5] Ironically, according to Defendant's documentation, one of the class representatives, Susan Sabol, made her Hydroxatone purchase through an IVR system. *See* Exhibit 25 to Margolis Objection at 2 ███████████████████████████████████████████
███████████████████████████████████████████████████████

conflict of interest where he was the uncle and law partner of his attorney)); *Sweet v. Bermingham*, 65 F.R.D. 551, 552 (S.D.N.Y. 1975) (plaintiff's husband was partner in class counsel's law firm); *Stull v. Pool*, 63 F.R.D. 702, 704 (S.D.N.Y. 1974) (wife of attorney as named plaintiff); *Dennis v. Saks & Co.*, 20 Fed. R. Serv. 2d 994, at *4 (S.D.N.Y. July 10, 1975) (disqualifying named plaintiff who was wife of an attorney at the firm representing her).

The Margolis Objection's reliance on *FTC v. Willms*, Case No. 2-11-cv-828-MJP (W.D. Wash. Feb. 22, 2012) (Ex. 24 to Margolis Objection) and the declaration of an expert in that case for the proposition that the Margolis claims were a virtual "slam dunk" is equally perplexing. Class Counsel does not take issue with Margolis' contention that the IVR marketing was deceptive.  Indeed, even in the original Complaint in this litigation, Class Counsel asserted that all forms of Hydroxatone's "free trial" marketing were deceptive. Class Action Complaint, ECF No. 1, ¶ 2 ("This action seeks relief on behalf of the Class . . . declaring that Hydroxatone's advertising of a risk free trial and/or 30-day money back guarantee is deceptive and misleading . . . .").   But the fact that a government agency (the "FTC") succeeded into entry of  a *stipulated* permanent injunction with a Company enjoining negative option features and defendants from misrepresenting the meaning of "free" or "risk free" hardly means the *Margolis* claims – or the *Sabol* claims for that matter – would have been successful in this litigation.  As noted above and in Plaintiffs' Memorandum in Support of Settlement, there are substantial hurdles to succeeding on the merits and in certifying a class, all of which entered into Class Counsel's decision to enter into the Class settlement.

b.   *Margolis' Damage Claims are Completely Baseless*

The Margolis Claim as to the size of Class-wide damages, is not only far-fetched, but is directly refuted by the very documents they cite in support thereof.  According to the Margolis

Objection, the IVR claims alone are valued at $300 million.[6] While that conclusion is dubious based solely on the fact that just a month ago, and based on the same evidence, Margolis Counsel claimed that damages for the IVR claims was in excess of *$200* million[7] *See* Letter to Judge Hammer, from Margolis Counsel, June 5, 2013 (ECF No. 96). Margolis reaches this figure by applying yearly net sales by ACMG with the percentage of sales made via IVR, both figures purportedly supplied by Defendants. *See* Margolis Objection at pp. 11-12; Ex. 12. The problem with that analysis is obvious: while the percentage of yearly IVR sales is accurately cited from Defendants' document, application of that number to the "Total Net Sales" is improper. █

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████     *See* Chart attached as Exhibit 3. And, of course, that number assumes that everyone who purchased through IVR was deceived and/or was not satisfied with their product purchases – a showing that Margolis counsel could never make on a class-wide basis.

Thus, even if the ███████████ represented an accurate depiction of overall damages to the IVR purchasers, the Settlement value of $7 million in benefits to the Class makes this settlement eminently reasonable. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 14` (3d Cir. 2001) (typical

---

[6] Class Counsel will avoid speculating the basis for Margolis' statement that the "Refund" Claims are worth only $10 million. Margolis Objection at 1; *see also In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491, 508-09 (W.D. Pa. 2003) (no need to speculate as to a specific possible maximum recovery when any best case scenario is dimmed by the fact that the chances of collecting any such damages are slim).

[7] Notably, the Margolis insurance "expert" also states in his report that the Margolis "class" was billed over $200 million. *See* Margolis Objection, Ex. 1 at p. 7.

recoveries in complex class actions range from 1.6% to 14%); *see also* N*ichols v. SmithKline Beecham Corp.*, CIV.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) (settlement between 9.3% and 13.9% of maximum possible recovery was reasonable); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (settlement in the range of 5.2% to 8.7% of maximum possible recovery was reasonable given the attendant risks and costs of continued litigation). Notably, the true percentage is within the range of reasonableness (6 to 12%) cited  by Margolis Counsel.  Margolis Objection at 14 (citing *In re Newbridge Networks Securities Litig.*, No. 94-1678-LFO, 1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 23, 1998)

> 2.    The Settlement Does Not Favor  "Refund Claims" Over  "IVR Claims"

As noted above, there are not two classes –Class Members who purchased products using the IVR system always had the ability to ask for their money back and/or to request that future shipments of product be cancelled.  Thus, those that purchased free trial Hydroxatone products by any method are part of the Class.  What the settlement allocation reasonably does is allocate cash (or their choice of products) to those people who made free-trial Hydroxatone purchases and who's requests to return or cancel went unheeded by the Company (Group 1) and allocate free products to those that never made such a request (Group 2).[8]  This allocation plan recognizes the commonsense fact that the cancellation/refund claims had a greater chance of success than  a claim asserting that a person was deceived by defendants' conduct. *See e.g. In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 126 (D.N.J. 2002) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.") (citing  *In re*

---

[8] While Margolis takes umbrage with the phrase "whiles supplies last," to describe the product benefits  (Margolis Objection at 1, 13, 14 & 20), that provision does not mean that there is an artificial limitation on products (other than as limited by $4 million cap), but rather is included in the event that one or more products in the Group 1 or Group 2 lists are unavailable. In that case, another product would be substituted.

*Computron Software, Inc.,* 6 F.Supp. 313, 321 (D.N.J. 1998)); *see also In re Ikon*, 194 F.R.D. 166, 183-84.

And it is simply wrong to assert, as Margolis does, that those who purchased free trial products via IVR are relegated to only products as part of the Settlement. Margolis Objection at 20-21. Anyone – including those that purchased via IVR -- who attempted to cancel or sought a refund who did not receive one can receive cash in the Settlement.  In fact, according to her counsel, ***Ms. Margolis, herself, called up and asked for, but was not granted,  a refund of her purchases.*** *See Margolis* Class Action Complaint and Demand for Jury Trial, (no. 2:11-cv-04355, ECF No. 1, at § 22).  Contrary then to Ms. Margolis' objection, she may put in a claim form for cash relief under the settlement.[9]   And, as is evident from the stream-lined claim form, it is relatively easy for Class Members like Ms. Margolis to claim Group 1 benefits.  The claim requires the Claimant to state the amount they paid that was more than shipping and processing and the approximate date they initially ordered risk free trial offer, but does not require detailed information regarding the date she attempted to make a return or cancel.  Thus, there is a relatively low bar for purported IVR purchasers like Ms. Margolis to share in the Cash Fund.[10]

3.   Margolis Does Not Refute the Conclusion That Defendant ACMG Is In Poor Financial Condition

Under well-settled law, *one* of the many factors relevant to the reasonableness of a settlement is whether a defendant would be able to withstand a greater judgment. *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975) (listing settlement approval factors); *see also In re Lucent*

---

[9] In her Affidavit, Ms. Margolis even says she wants  money  back rather than product shipment.  See Affidavit of Lisa Margolis, ¶ 9, attached to Margolis Objection as Ex. 9.

[10] Per the terms of the Settlement Agreement, Defendants may review any claim and object to its payment if it does not meet the terms of the Settlement (e.g. if the claimant is not a valid Class Member or received a complete refund), but Class Counsel also had a right to contest such objection.  Settlement Agreement. §  6.9.

1757797.1

*Technologies, Inc., Secur. Litig.*, 307 F.Supp.2d 633, 646-647 (D.N.J. 2004) (fact that defendants would be unable to withstand full judgment supported settlement).  Armed with a purported "expert" report, Margolis tries to argue that this factor has not been met in this case.  Yet the converse is true.  As the Margolis Objection reluctantly acknowledges, ACMG presented audited financial statements for years 2009-2012 and the financial statements confirm that ACMG's financial condition has not been strong.  In fact, the 2011 financial statements show ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████[11]

And the letter exhibit from the financial consultant, Robert Greenwald, in the Margolis Objection does nothing to refute any of this.  As noted by Mr. Greenwald, he has started with a flawed premise (no doubt given to him by Margolis counsel) that he was hired to determine ACMG's claim of "insolvency."  *See* Exhibit 2 to Margolis objection.  "Insolvency," however has a very deliberate meaning in the legal and financial world – it means "[t]he condition of being unable to pay debts as they fall due or in the usual course of business."  Black's Law Dictionary (9th Ed. 2009).  Under the Bankruptcy laws, of which "solvency" is  a critical element, "insolvent" means  "financial condition such that the sum of [an]entity's debts is greater than all of such entity's property, at a fair valuation."  11 U.S.C. § 101(32).  Insolvency has never been a requirement to show that a defendant is unable to withstand a greater judgment.

Neither Class Counsel nor Defense Counsel in this Litigation have ever made the statement that ACMG was "insolvent."  What Class Counsel has said – and which is unrefuted –

---

[11] Defendant's financial statements were produced to Class Counsel and Margolis Counsel on a confidential basis and are subject to a Protective Order.  Class Counsel only refers to the 2011 figures because Margolis Counsel chose to attach these financial statements to its Objection.

is that ACMG's , financial condition cast doubt on its ability to withstand a judgment for the full value of Plaintiff's claims.  *See* Opening Brief at 23.  There is simply no requirement that a defendant be "insolvent" to support this factor.  *See e.g. In re Safety Components, Inc. Securities Litig.*, 166 F. Supp. 2d 72, 91-92 (D.N.J. 20001) (Defendants who had recently emerged from bankruptcy "presumably will operate in a very cash poor state for a considerable period of time" and thus were unlikely to be able to withstand a greater judgment); *Seifer v. Topsy's Itern., Inc.*, 70 F.R.D. 622, 630 (D.Kan. 1976) (approving securities settlement and accepting showing by parties that company was in poor financial condition and would be unable to pay a full judgment).  Thus, Margolis' statements about the conclusions of his consultant are a red herring.[12]

### 4.    The Additional Insurance Coverage Reference by Margolis is Irrelevant

In inflammatory language, dripping with conjecture, the Margolis objection takes issue with Class Counsel's inability to, or purported ignorance of,  additional insurance policies totaling up to $13 million.  .  Putting aside what was actually (or not) said by Class Counsel to Margolis counsel, the existence of other insurance policies to potentially cover the claims made in the Litigation is hardly dispositive of whether the settlement is fair, reasonable and adequate. The bottom line is the existence of insurance amounts is only as relevant as the strength of one's case on liability and damages.  Where claims made are not colorable or the damage expectations are not realistic, all the insurance in the world is meaningless – insurance carriers are not known for giving up their policies simply because someone has filed claims against their insureds. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 02-CV-3400 CM PED, 2010 WL 4537550, at *9-

---

[12] Moreover, Mr. Greenwald never opined that there was anything inherently wrong with the financial information supplied by ACMG, rather that it was "…not adequate from a financial standpoint, to accept the claim of insolvency."  See Ex. 2 at p. 1.

10 (S.D.N.Y. Nov. 8, 2010) ($24.4 million settlement approved where $250 million D & O

policy existed, but there were serious complications and disagreements about coverage).

Here, Margolis notes the existence of two ACMG Directors & officers ("D&O") policies

for officers/directors of ACMG totaling $10 million which might cover Thomas Shipley.  Their

mere existence, however, does not mean that the Class has any "right" to them.  In addition to

the huge hurdles faced in succeeding on the Margolis claims noted above, to succeed on claims

against the individual Shipley, Margolis would have had to prove at trial that it was Shipley –

*and not merely the corporate entity ACMG* – that committed fraud and  was unjustly enriched by

the allegedly deceptive conduct.   Fraud under New Jersey law requires proof that: "(1) a

material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the

defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance

thereupon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*,

148 N.J. 582, 610 (N.J. 1997).Where there are not even allegations in the Margolis complaint

that Defendant Shipley personally made any statements to members of the Class, a finding of

personal liability would have been problematic.  *Cf. Janus Capital Group v. First Derivative*

*Traders*, 131 S.Ct. 2296, 2202-03 (2011) (rule for false statement liability is that the "maker" of

a statement is the one states it, no liability for those who prepare statements); *see also Central*

*Bank of Denver N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164 (1994); *Stoneridge*

*Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008). Absent such proof, to

recover anything from Shipley would have required a showing that the ACMG entity itself was a

"sham" which existed to avoid the personal liability of Shipley and other officers.  *See New*

*Jersey Dept. Env't Prot. v. Gloucester Env't Mgmt. Serv., Inc.*, 800 F.Supp. 1210, 1219 n. 9

(D.N.J.1992) (noting that in order to pierce the corporate veil, evidence must be presented to

show that the corporation is a "sham" which existed to avoid personal liability of the officers.)

The Margolis Objection also cites a $3 million insurance policy purportedly covering Marketing Architects. However, the claims against them are even more tenuous. Marketing Architects was a consultant to Hydroxatone and ACMG and was never named in advertisements to members of the Class. Moreover, the agreement between Marketing Architects and ACMG states that Marketing Architects was relying on the information given to it by Hydroxatone/ACMG. *See* Advertising Agreement, attached as Ex. 4, at Ex. A ¶ 5 (Hydroxatone/ACMG ". . . represents and warrants that . . . it will provide factual and truthful information on the advertised products and services and that creative approved by Advertiser will comply with all applicable laws and regulations . . .") . These factors made the claims against it Marketing Architects extremely weak.

Finally, as a practical matter, even had Class Counsel pressed claims against Marketing Architects that would have been unlikely to increase any class recovery because Marketing Architects had a contractual indemnification agreement with Hydroxatone/ACMG. *Id.* at Ex.A, ¶ 8. Thus, any claims pursued against it would ultimately become Hydroxatone/ACMG's burden.

### 5.    The Settlement Release is Standard and Not Overbroad

As noted in detail above, both the *Sabol* and *Margolis* litigation was based on the same factual predicates – namely, that Hydroxatone/ACM G had a deceptive and wrongful scheme by which Defendants could wrangle funds from Class Members for purported "free trials." Margolis Counsel chose to litigate the more problematic issue of overall deception to the Class and limited its class to only the IVR deception, Class Counsel approached the litigation via the best methodology to achieve a significant benefit for the Class. Class Counsel sought to avoid the problems of proving who was truly deceived by seeking compensation for those that were definitively harmed – those that may have been deceived (or not), and were denied cancellation and/or rights, as guaranteed by contract. And Class Counsel did not limit the Class to those who

purchased pursuant to the IVR.   Thus, Margolis' assertions to the contrary, it is clear that the two actions did not derive from two separate factual predicates.  Margolis Objection at 2.[13]

It is equally clear that everyone in the Class, whether they were deceived or not by defendants' marketing (via IVR or other) will receive compensation.  Indeed, many class members that ordered via IVR  (as Ms. Margolis asserts she did)  will be entitled to the cash benefits by virtue of their unsuccessful attempt to return their products.

Given this, it is entirely appropriate to release the claims asserted in both the *Sabol* and *Margolis* cases.  The Third Circuit has made clear that "releases may include all claims, including unpleaded claims, that arise out of the same conduct alleged in the case. *In re Prudential Ins. Co. of Am.*, MDL 1061, 1999 WL 496491 (D.N.J. May 6, 1999) (citing *Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1562-64 (3d Cir. 1994) & *Sandler Assocs., L.P. v. Bellsouth Corp.*, 818 F.Supp.695, 704-05 (D.Del.1993) *aff'd*, 26 F.3d 123 (3d Cir. 1994).

Courts have recognized that settling parties have a legitimate interest in seeking "'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310-12 (3d Cir. 2011) cert. denied, 132 S. Ct. 1876, 182 L. Ed. 2d 646 (U.S. 2012) *reh'g denied*, 132 S. Ct. 2451, 182 L. Ed. 2d 1076 (U.S. 2012).  Settling defendants have a legitimate interest in putting to rest "non-viable claims" that other plaintiffs might bring. *Id.* (approving a global settlement releasing potential damage claims in all fifty states).  Here, the prospect of "global peace" was a driving factor in Defendant's willingness to settle Plaintiffs' claims, despite the fact that defense counsel did not believe those claims were particularly meritorious. Again, Courts have approved such a motivation in reaching

---

[13] Of course in her Motion to Consolidate, Margolis complained that her litigation and the *Sabol* litigation were nearly identical because, "the two complaints identify common defendants…involve the same negative-option delayed billing scheme; and share common causes of action."  Margolis Motion to Consolidate at 9.

class settlements.  *Id.* ("From a practical standpoint . . . achieving global peace is a valid, and valuable, incentive to class action settlements."); *see also Klein v. O'Neal, Inc.*, 2009 WL 1174638, at *3 (N.D. Tex. Apr. 29, 2009) ("In a class action settlement setting, defendants seek and pay for global peace – *i.e.*, the resolution of as many claims as possible."); *In re Vioxx Prods. Liability Litig.*, 574 F.Supp.2d 606, 613 (E.D. La. 2008) (quoting *In re Guidant Corp. Implantable Defibrillators Prods. Liability Litig.*, MDL No. 05-1708, 2008 WL 682714, at *3 (D.Minn. 2008) (noting that the parties "contemplated a global settlement covering Plaintiffs from both the MDL, Plaintiffs whose cases were filed outside the MDL in state court proceedings, and potential Plaintiffs who had no yet filed their cases.").

Allowing only narrow releases, as the Margolis Objection apparently proposes, would undermine "the strong presumption in favor of voluntary settlement agreements." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).  Requiring that settlements only release claims based on identical legal theories would also be impossible to execute in practice.  *Id.* ("[R]equiring a class to assert uniform or identical questions of law or fact . . . 'would seriously undermine the possibility for settling any large, multi-district class action.'") (citing *Prudential* 261 F.3d at 367).

Finally, the inclusion of Marketing Architects in the release was entirely appropriate. It is common to release consultants and agents of defendants.  *See e.g. In re Prudential* 962 F.Supp. 450, 559 (D.N.J. 1997) (citing *Willson v. New York Life Ins. Co.*, No. 94-127804, 1995 N.Y. Misc. LEXIS 652 (N.Y. Sup. Ct. Nov. 8, 1995)). To do otherwise would make it nearly impossible to achieve settlements. More importantly, the release of Marketing Architect was an important factor in reaching the Settlement because of the indemnification agreement existing between Marketing Architects and Hydroxatone / ACMG. The case law is clear that the release of third parties that the settling party would be responsible to indemnify is entirely appropriate in

18

circumstances such as these. *See e.g. In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962

F. Supp. 450, 558-59 (D.N.J. 1997) *aff'd sub nom, In re Prudential Ins. Co. Am. Sales Practice*

*Litig. Agent Actions,* 148 F.3d 283 (3d Cir. 1998) and enforcement granted *sub nom*.("A

settlement with Prudential alone would lack finality because if dissatisfied policyholders sued

Prudential agents, the agents would likely turn to Prudential for indemnity or contribution.")

(citing *Willson v. New York Life Insurance Co.,* No. 94-127804,. 1995 N.Y. Misc. LEXIS 652, at

*71 (N.Y. Sup. Ct. Nov. 8, 1995.)[14]

      6.     <u>The Settlement Provides Strong Prospective Relief and By No Means</u>
                  <u>Blesses Defendant's Conduct</u>

      The Margolis Objection claims that "the settlement fails one of the essential purposes of

the Consumer Fraud Act under which the claims were brought – it does not deter the deceptive

conduct." Margolis Objection at 2. While providing deterrence is not a requirement under the

*Girsh* factor test, Class Counsel submits that payment of significant cash and products (whether

from insurance or otherwise) coupled with injunctive relief fosters deterrence.[15]

---

      [14] The Margolis Objection's reference to *Karvaly v. eBay, Inc.*, 245 F.R.D. 71 (E.D.N.Y. 2007) is misguided. First, in *Karvaly*, the central issue was that the release defined a class very broadly, but only gave relief to a smaller subclass, and gave the rest of the class *nothing* (the "injunctive relief," which supposedly was a benefit to the entire class, which amounted to disclosure language on the website, was already added before the settlement even was reached as the result of an agreement with state attorneys generals that were investigating defendants). *Id.* at 81-83. In the instant case, all members of the Class will receive benefits.

      Second, the scope of the release in *Karvaly* was drastically broader than the release in the Amended Settlement Agreement. The release in *Karvaly* included all present and future claims against defendants under any of the statutes or common law theories referenced in the complaint, and applied to practically all customers.

      [15] The sole Third Circuit authority cited in the *Margolis* Objection for the proposition that settlements must deter conduct, *Securities and Exchange Commission v. Teo*, 2011 U.S. Dist. LEXIS 103413, at &14 (D.N.J. Sept. 11, 2011) only serves to show that one purpose of disgorgement is to deter deceptive conduct. *Teo* does not stand for the proposition that disgorgement is a requirement for a settlement to be adequate.

Moreover,  the Settlement Agreement does, in fact, include strong prospective relief and does not "bless"  Defendant's prior business practices.  Among other things, the Settlement requires Defendants to disclose the terms of their risk-free trial and auto-shipment programs – the crux of both the *Sabol* and *Margolis* cases – in a "clear and conspicuous manner prior to getting the customer's final acceptance to the offer."   The Settlement also provides that Defendants will  provide a simple mechanism on its websites to effectuate a cancellation of an Auto-shipment program and will send email confirmations of such cancellation their auto-shipment programs,  within 10 days of cancellation,  to those customers that provide an email address. [16]  These are all meaningful forms of prospective relief that address core issues in the *Sabol* and *Margolis* litigation.[17]

### B.     The Lussier Objection

Mr. Lussier's first objection to the Settlement is that his potential benefit of $100 is inadequate to make him whole for all he spent on Hydroxatone products. Class Counsel sympathizes with Mr. Lussier's concerns, but in the final analysis, the desire for a settlement to be "better" is not a valid objection and should not stand in the way of final settlement approval. C*areccio v. BMW of N. Am. LLC,* No. 08–2619(KSH), 2010 U.S. Dist. LEXIS 42063, at *17, 2010 WL 1752347 (D.N.J. Apr. 29, 2010) ("[F]ull compensation is not a prerequisite for a fair settlement.") *Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546, 579 (D.N.J.2010) ("[C]omplaining that the settlement should be 'better'... is not a valid objection.") (internal

---

[16] As discussed *infra*, it is irrelevant that in a non-class action, the FTC arguably was able to get greater  injunctive benefits in its stipulated permanent injunction.  See Margolis Objection at 2,3,8-10,21,24, 25 (citing  *FTC v. Willms*, Case No. 2-11-cv-828-MJP (W.D. Wash. Feb. 22, 2012) (Ex. 24 to Margolis Objection)).

[17] Should Defendants not abide by such prospective relief, Class Counsel can seek to enforce the terms of the Settlement, after written notice and Defendants' failure to cure their breach.  Settlement Agreement, §4(c)(i).

20

quotation marks and citation omitted). Objections based solely on the amount of the award lack merit. *See Hall v. AT & T Mobility LLC,* No. 07–5325(JLL), 2010 U.S. Dist. LEXIS 109355, at *30, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ("[T]he fact that the []Objectors would prefer that all Class Members receive greater cash benefits ... has no bearing on whether the terms of the Settlement Agreement itself are fair and reasonable.").

As for Mr. Lussier's objection to the proposed award of attorneys' fees in this case, Class Counsel respectfully submits that their fee request is reasonable and that even if they are awarded the requested fees, they will receive far less than their lodestar incurred. Class Counsel has already extensively briefed the issue of the reasonableness of the fee request in their Memorandum in Support of Plaintiffs' Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Participation Awards, filed with the court on May 31, 2013 (ECF No. 93).

Finally, Mr. Lussier's conclusion that Hydroxatone's actions constitute criminal activities is beyond the scope of this civil litigation.  As such, Class Counsel has no opinion or argument on the matter.

## III.    <u>CONCLUSION</u>

A presumption of fairness exists where a settlement has been negotiated at arm's length, discovery was sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. *In re Warfarin Antitrust Litig.*, 391 F.3d 516, 535 (3rd Cir. 2004) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001). Here, as the Court is aware, the settling parties negotiated the settlement in an intense face-to-face mediation presided over by the Honorable Stephen M. Orlofsky (Ret.).  Judge Orlofsky has submitted a declaration affirming that the settlement was the result of a hard fought mediation and that the settlement was the result of compromise, not collusion. Further, counsel for Defendants and Class Counsel have

1757797.1

substantial experience in class actions generally and class action concerning consumer protection claims specifically. There were only two true objectors, or one for every 1.3 million class members.  For these and all the reasons detailed above, the objections to the Settlement should be overruled and the Settlement should be finally approved.

Dated: July 9, 2013

                                        Respectfully submitted,


                                        By  /s/ Alan Sash
                                        Alan Sash
                                        Lee S. Shalov
                                        260 Madison Ave.
                                        New York, NY
                                        McLAUGHLIN & STERN LLP
                                        Tel: (646) 278-4298
                                        Fax: (212) 448-0066

                                        Andrew N. Friedman
                                        COHEN MILSTEIN SELLERS & TOLL PLLC
                                        1100 New York Avenue, N.W., Suite 500 West
                                        Washington, DC  20005-3964
                                        Tel: (202) 408-4600
                                        Fax: (202 408-4699

                                        Angela Edwards
                                        LAW OFFICES OF ANGELA EDWARDS
                                        72 Canterbury Circle
                                        East Longmeadow, MA 01028
                                        (413) 525-3820

                                        *Plaintiffs' Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true and correct copy of the attached Plaintiffs' Reply Memorandum in Further Support of Plaintiffs' Motion for Final Approval of the Proposed Amended Settlement was served upon Defendants' counsel via ECF.


 /s/ Alan Sash
Alan E. Sash


Dated: July 9, 2013

23